[No. B193159. Second Dist., Div. Five. Oct. 4, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD A. SINGLETON, Defendant and Appellant.

## COUNSEL

Robert H. Pourvali, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Keith H. Borjon and Yun K. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KRIEGLER, J.**—Burglary of an inhabited dwelling house is a violent felony when it is charged and proved that a person other than the defendant or an accomplice "was present in the residence during the commission of the burglary." (Pen. Code, § 667.5, subd. (c)(21).)[1] The issue presented in this case is whether a resident's presence in the hallway outside of an apartment unit during a burglary is sufficient to satisfy the requirement of section 667.5, subdivision (c)(21). We hold it is not.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

A jury convicted defendant and appellant Richard A. Singleton of two counts of first degree burglary of an inhabited dwelling house (§§ 459, 460). The jury found true a special allegation that a person, other than an accomplice, was present during the second burglary, thus making the burglary a violent felony (§ 667.5, subd. (c)(21)). Defendant admitted suffering a prior conviction under the three strikes law (§§ 1170.12, subds. (a)–(d), 667, subds. (b)–(i)). The trial court sentenced defendant to state prison for a term of eight years.

In his timely appeal, defendant contends the trial court violated his due process rights by failing to properly instruct the jury on the definition of "in the residence" for purposes of the violent felony finding. Defendant also argues there was insufficient evidence anyone (other than defendant) was "present in the residence" during the second burglary. We agree and reverse the finding under section 667.5, subdivision (c)(21).

## STATEMENT OF FACTS

Defendant, Abel Rodriguez, and Daniel Velasquez[2] shared a two-bedroom apartment located on the third floor of an apartment building for six months. A hallway runs along the outside of the building, providing access from the stairs to the apartment. Access to the third floor is restricted by a locked gate on the stairs. Rodriguez and Velasquez asked defendant to move out due to their concern for the security of their belongings.

Defendant moved out of the apartment in early September 2005. Defendant was no longer allowed in the apartment unless Velasquez or Rodriguez was present and defendant was retrieving items he had left behind. On September 10, as Rodriguez was leaving the apartment, defendant was walking up the stairs. Rodriguez left the gate open for defendant. Later that day, as Velasquez was coming home, he saw defendant walking down the stairs from the apartment carrying a blue shoulder bag. Rodriguez subsequently discovered his laptop, normally kept in a blue shoulder bag, was missing.

On September 11, as Velasquez returned to the apartment, he noticed defendant's car parked outside. Velasquez used his cell phone to call the apartment's phone, but no one answered. To ensure defendant "wouldn't just

---

[2] There appears to be confusion as to how to spell this witness's name. He spelled it out as "Valesquez" during his testimony; the information and verdict forms spelled it "Valasquez"; and the court reporter, as well as the sentencing memorandum, spelled it "Velasquez." We use the name Velasquez, because it is the predominant spelling throughout the record.

run away," Velasquez removed the battery from defendant's car and walked upstairs to the third floor. He passed through the locked gate, stood at the top of the stairs in the hallway leading to the apartment, and waited around the corner for nearly half an hour, watching the door to his apartment. When defendant exited the apartment, he was carrying a duffel bag. Defendant walked past Velasquez to reach the stairs. As defendant passed, Velasquez asked about the duffel bag's contents. Defendant explained the bag contained dirty laundry and kept walking. Defendant tried to drive away, but when he discovered his car no longer had a battery, he placed the duffel bag in an alleyway behind the apartment building and fled on foot. Velasquez found the duffel bag and discovered it contained Velasquez's DVD player, clothes iron, and car stereo.

## DISCUSSION

Defendant argues the trial court erred in answering the jury's questions pertaining to the "occupied burglary" allegation and the evidence is insufficient to support the jury's finding that the allegation was true. We need not decide whether the trial court's response to the jury was prejudicial error, because there is insufficient evidence to support the finding that another person was present in the residence at the time of the burglary.

During its deliberations, the jury asked the trial court three questions: (1) what is the definition of a residence; (2) is there is a distinction between a residence and a dwelling; and (3) "is inside the locked gate considered 'present in the residence.' " In response, the trial court pointed the jury to CALJIC No. 14.50, which defines a "building" as a "structure" for purposes of the entry element of burglary, responded that "a residence is a dwelling," and answered "it is for you to decide whether inside the locked gate is considered 'present in the residence.' " Defendant objected to the trial court's third answer.

■ Defendant's contentions require us to determine the meaning of "present in the residence" for purposes of the violent felony finding under section 667.5, subdivision (c)(21). Enacted as part of Proposition 21 in 2000, section 667.5, subdivision (c)(21) elevates a first degree burglary (§ 460) to the status of a violent felony if a person other than an accomplice is "present in the residence" during the burglary. (*Doe v. Saenz* (2006) 140 Cal.App.4th 960, 974 [45 Cal.Rptr.3d 126].) A defendant convicted of a violent felony is limited as to the amount of presentence and postsentence custody credits that

can be earned. (See *People v. Garcia* (2004) 121 Cal.App.4th 271, 274 [16 Cal.Rptr.3d 833] (*Garcia*) [discussing presentence custody credits].) Thus, a defendant convicted of a serious felony, such as first degree burglary of an inhabited dwelling house, can earn good time/work time credits to reduce his or her sentence up to 50 percent (§ 4019; *People v. Heard* (1993) 18 Cal.App.4th 1025, 1029 [22 Cal.Rptr.2d 684]), but a defendant convicted of a violent felony can earn a maximum of 15 percent in custody credits, thereby ensuring that he or she serves at least 85 percent of the sentence imposed. (§ 2933.1, subd. (b); *Garcia, supra*, 121 Cal.App.4th at p. 274.) Based upon the jury's finding on the special allegation in this case, defendant is limited to earning presentence and postsentence conduct credits of no more than 15 percent of his eight-year sentence.

The parties agree that Velasquez was not physically inside the apartment unit at the time it was burglarized. They agree he was outside the apartment itself, down the hall, around the corner, yet within the locked gate restricting access to the third story of the building. The question in this case turns on whether Velasquez was nevertheless "present in the residence" as he stood in the outside hallway for purposes of section 667.5, subdivision (c)(21). We review the statutory interpretation issue de novo. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956].)

■ The canons of statutory interpretation are well settled. (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672].) "Our role in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citation.] Because the statutory language is generally the most reliable indicator of that intent, we look first at the words themselves, giving them their usual and ordinary meaning. [Citation.] We do not, however, consider the statutory language in isolation, but rather examine the entire substance of the statute in order to determine the scope and purpose of the provision, construing its words in context and harmonizing its various parts. [Citation.]" (*Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1040 [130 Cal.Rptr.2d 672, 63 P.3d 228].) "Where the words of the statute are clear, we may not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history." (*Burden v. Snowden, supra*, 2 Cal.4th at p. 562.)

■ Section 667.5, subdivision (c)(21) is plain on its face, and it requires a person, other than an accomplice, be "*present in the residence* during the commission of the burglary." (Italics added.) The plain meaning of "present in the residence" is that a person, other than the burglar or an accomplice, has crossed the threshold or otherwise passed within the outer walls of the house, apartment, or other dwelling place being burglarized. "The threshold line of

the building is located at the doorways into the apartments. One who stands on the stairway would not be considered 'inside' the building under ordinary parlance." (*People v. Wise* (1994) 25 Cal.App.4th 339, 345 [30 Cal.Rptr.2d 413].) Certainly, it would not comport with the ordinary and plain usage to consider someone standing outside, around the corner, and down the hall from an apartment to be present in that apartment.

■ "[W]e are required to ascribe significance to every word of each statute we are called upon to apply." (*People v. Jones* (1988) 46 Cal.3d 585, 596 [250 Cal.Rptr. 635, 758 P.2d 1165].) Each word of a statute is assumed to have been chosen carefully to impart its own meaning. (See *Cassista v. Community Foods, Inc.* (1993) 5 Cal.4th 1050, 1056 [22 Cal.Rptr.2d 287, 856 P.2d 1143].) We therefore assume the drafters chose the language "present in"—rather than "near" or "around," or "in the vicinity"—to impart its common meaning. (Cf. § 212.5, subd. (b) [defining robbery of the first degree as including a robbery after a person has used an automatic teller machine and the person "is in the vicinity of the automated teller machine"].) As such, the nonaccomplice cannot merely be near, at, or around the residence, but must be *in* the residence for the purposes of the statute.

■ Moreover, we note the Proposition 21 drafters chose the term "residence," not "inhabited dwelling," for purposes of the violent felony allegation. The latter term defines the predicate crime of first degree burglary. When a statute uses different, albeit similar, words to those in related statutes, there is a compelling inference that different meanings were intended. (See, e.g., *People v. Jones, supra*, 46 Cal.3d at p. 596.) Although a residence may be an inhabited dwelling, the latter term has acquired specialized meaning with reference to burglary under this state's precedent. In keeping with the purpose of the statute in providing heightened protection to dwelling places and in recognition of the increased danger of violence when such places are burglarized, the term "inhabited dwelling house" has been given a " 'broad, inclusive definition.' " (*People v. Villalobos* (2006) 145 Cal.App.4th 310, 317 [51 Cal.Rptr.3d 678], quoting *People v. Cruz* (1996) 13 Cal.4th 764, 776, 779 [55 Cal.Rptr.2d 117, 919 P.2d 731].) As a result, "a temporary place of abode, such as a weekend fishing retreat [citation], a hospital room [citation] or even a jail cell [citation], may qualify." (*People v. Villalobos, supra*, 145 Cal.App.4th at p. 318.)

■ Section 667.5, subdivision (c)(21), neither equates "residence" with "inhabited dwelling," nor gives a special definition to the former term. "When a statute does not define some of its terms, we generally look to 'the common knowledge and understanding of members of the particular vocation or profession to which the statute applies' for the meaning of those terms." (*Pasadena Police Officers Assn. v. City of Pasadena* (1990) 51 Cal.3d 564, 575

[273 Cal.Rptr. 584, 797 P.2d 608], quoting *Cranston v. City of Richmond* (1985) 40 Cal.3d 755, 765 [221 Cal.Rptr. 779, 710 P.2d 845].) "A residence" is a term unused in other statutory references to burglary, strongly indicating the term was intended to refer to a location different than the broadly interpreted "inhabited dwelling."

█ In addition, the drafters of Proposition 21 were aware of the special terminology used in our burglary statutes, since section 667.5, subdivision (c)(21) specifically refers to section 460 for purposes of defining the predicate offense. Again, the drafters had the clear opportunity to employ the specialized term "inhabited dwelling" for purposes of defining the nature of an occupied burglary for violent felony purposes, but chose the nontechnical term instead. "In the case of a voters' initiative statute . . . we may not properly interpret the measure in a way that the electorate did not contemplate: the voters should get what they enacted, not more and not less." (*Hodges v. Superior Court* (1999) 21 Cal.4th 109, 114 [86 Cal.Rptr.2d 884, 980 P.2d 433].) In accordance with the appropriate canons of construction, we cannot ascribe to the commonplace term "residence" the broad, technical meaning given by case law to "inhabited dwelling." It would be unreasonable to find the voters understood "present in the residence" to apply when a person was standing in the hallway, outside an apartment unit.

It is apparent from the foregoing discussion that our statutory interpretation analysis requires reversal of the occupied burglary allegation on the ground of insufficiency of the evidence. In assessing a claim of insufficiency of evidence, the reviewing court's task is to "review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738].) The federal standard of review is to the same effect: Under principles of federal due process, review for sufficiency of evidence entails not the determination whether the reviewing court itself believes the evidence at trial establishes guilt beyond a reasonable doubt, but instead, whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*Jackson v. Virginia* (1979) 443 U.S. 307, 317–320 [61 L.Ed.2d 560, 99 S.Ct. 2781].)

█ Viewed in the light most favorable to the judgment, there was no evidence that Velasquez was present in the apartment during the burglary. A comparison with *Garcia, supra*, 121 Cal.App.4th 271 is helpful. There, a resident and his friend "were startled by the sound of continuous banging on the back door while they were watching television. Both men remained inside

the residence for an undetermined period of time; there is no evidence they 'immediately' ran from the house as [the defendants] suggest. It is reasonable to infer the noise they heard was the sound of the back door being pried off its hinges by a tool inserted into the door jamb, which the police indicated was the means by which [the defendants] gained access to the house. Because insertion of the tool into the doorjamb itself constituted entry into the residence, the evidence is sufficient [the resident] was present during the commission of the burglary within the meaning of section 667.5, subdivision (c)(21)." (*Garcia, supra*, 121 Cal.App.4th at p. 281.) In contrast, Velasquez remained outside in the hallway while the burglary of the residence was in progress.

Because the evidence is insufficient to support the allegation, it must be reversed. Our determination of the sufficiency of the evidence issue renders the instructional issue moot.

The issue arises, therefore, whether the Fifth Amendment's double jeopardy protections, made applicable to the states through the Fourteenth Amendment, proscribe retrial of the violent felony allegation. (*Burks v. United States* (1978) 437 U.S. 1 [57 L.Ed.2d 1, 11–14, 98 S.Ct. 2141]; see, e.g., *People v. Seel* (2004) 34 Cal.4th 535, 544 [21 Cal.Rptr.3d 179, 100 P.3d 870] ["the double jeopardy clause precludes a second trial after a conviction is reversed based solely on insufficient evidence"].) As the parties did not discuss this issue, we requested supplemental briefing.[3] As explained *ante*, the direct penal consequence to defendant of a "violent felony" determination under section 667.5, subdivision (c), was to limit the accrual of pretrial conduct credits to 15 percent under section 2933.1. Upon review of the parties' submissions and having considered the issue more fully, we find the issue is not yet ripe for determination. (*People v. Zermeno* (1999) 21 Cal.4th 927, 933–934, fn. 3 [89 Cal.Rptr.2d 863, 986 P.2d 196] ["We do not decide the double jeopardy question defendant raises here. Unless and until the prosecution chooses to retry the [Street Terrorism Enforcement and Prevention] Act allegation, the issue is premature"], citing *People v. Swain* (1996) 12 Cal.4th 593, 610 [49 Cal.Rptr.2d 390, 909 P.2d 994].)

---

[3] We recognize that it is highly unlikely that a retrial will be held on this question, given the state of the record, in the absence of discovery of heretofore unknown evidence of the presence of someone other than defendant in the apartment at the time of the burglary.

## DISPOSITION

The finding that the burglary in count 2 was a violent felony pursuant to Penal Code section 667.5, subdivision (c)(21) is reversed. In all other respects, the judgment is affirmed.

Turner, P. J., and Mosk, J., concurred.