[No. A132604. First Dist., Div. Five. Feb. 27, 2013.]

THE PEOPLE, Plaintiff and Respondent, v.
DELLREITTA GUION, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II.A. and B.

## COUNSEL

Matthew Zwerling and Matthew A. Siroka, under appointments by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Eric D. Share and Ronald E. Niver, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SIMONS, Acting P. J.**—Following an automobile accident, one of the drivers, appellant Dellreitta Guion, identified herself to the investigating officer as Jean Haile and arranged to have her son bring a driver's license in Haile's name to the scene. Guion then presented that license to the officer. Later that day, Guion admitted she had lied and revealed her true name. Based on these facts, a jury convicted Guion of felony false personation (Pen. Code, § 529, former subd. 3) (former section 529(3)).[1] A search of Guion's apartment conducted several days after she falsely identified herself produced evidence that led to her conviction of two additional charges, possession of a controlled substance (Health & Saf. Code, § 11350), and unlawful acquisition of personal identifying information (Pen. Code, § 530.5, subd. (c)(1)) (section 530.5(c)(1)). Guion appeals from the judgment of conviction, challenging the trial court's denial of her motion for a trial continuance, the trial court's instructions to the jury on the identity theft charge (§ 530.5(c)(1)), and the sufficiency of the evidence to support her conviction for false personation (former § 529(3)).

In the published portion of this opinion, we conclude there was insufficient evidence of a violation of former section 529(3) to sustain that conviction because that provision requires "more than mere impersonation. It requires that the impersonator *use*—not just assert—the false identity in one of the

---

[1] All undesignated section references are to the Penal Code.

Former section 529(3) is substantively identical to current section 529, subdivision (a)(3). (Compare Stats. 2011, ch. 15, § 381, eff. Apr. 4, 2011, operative Oct. 1, 2011, with Stats. 1983, ch. 1092, § 296, p. 4050, eff. Sept. 27, 1983, operative Jan. 1, 1984.)

ways listed in [the statute's] three former subdivisions." (*People v. Casarez* (2012) 203 Cal.App.4th 1173, 1190 [138 Cal.Rptr.3d 178] (*Casarez*).) In the unpublished portion of the opinion, we also reverse the identity theft conviction. The judgment is otherwise affirmed.

## I. *Background*

Guion was charged by information with false personation of Jean Marie Haile-Brown (former § 529(3))[2] (count 1); possessing cocaine base (Health & Saf. Code, § 11350, subd. (a)) (count 2); receiving stolen property (§ 496, subd. (a)) (count 3); and unlawfully obtaining personal identifying information (§ 530.5(c)(1)) (count 4). At trial, Guion acknowledged three prior misdemeanor convictions for petty theft and a prior felony conviction for grand theft in the 1980's, a felony petty theft conviction with priors in 1994, a child abuse arrest in 2003 or 2004, and a battery conviction in 2004.

### A. *Trial Evidence*

On May 7, 2009, City of San Pablo Police Officer Kenneth White responded to the scene of a vehicle collision between Guion and another driver. Both cars were damaged, and he could not determine which driver was at fault. White asked Guion to identify herself. She was unable to provide identification and first claimed that her name was "Cynthia Dille," with a date of birth of April 17, 1962. When a records check failed to locate anyone with that name and date of birth, Guion gave her date of birth as January 22, 1959. When White was still unable to find any record of such a person, Guion claimed to be "Cynthia Marshall." Again no matching records could be found. White told Guion that he would need to take her to the police station to confirm her identity. Guion then claimed to be Jean Marie Haile and said she would call her son to bring her identification. Her son arrived and handed Guion a California driver's license in Haile's name, with what appeared to be Guion's photograph. Guion then handed Haile's driver's license to White, saying, "See, this is me."[3] Based on the appearance of the driver's license, White believed it was fake. When confronted, Guion admitted the identification was false but claimed she could not obtain real identification because she was in the federal witness protection program. White placed Guion under arrest. As they drove to the police station, Guion volunteered her real name and said she had been using Haile's name for years.

---

[2] A December 2010 amended information generally alleged a violation of section 529, but the charging language clearly refers to former section 529(3).

[3] White testified he believed that the picture on the identification was of Guion. Subsequent investigation determined the picture was of a woman named Barbara Nichols, whom Guion said she knew as "Cookie."

Haile testified that her identification, including her driver's license, had been lost or stolen three times in the previous five years, she did not know Guion, and Guion did not have permission to use her identification.[4] Her driver's license number matched the number on the false identification Guion presented to Officer White.[5]

On May 12, 2009, in the course of an investigation sparked by Guion's use of a false name, City of San Pablo Police Detective Daniel Wiegers searched Guion's residence pursuant to a warrant. He found rock cocaine that Guion admitted was hers. He also found Medi-Cal paperwork in several different names, with different Social Security numbers and dates of birth; a photocopy of a Health Plan of San Mateo employee identification badge with the name Vernon C. Pierce under Guion's picture; identification cards in the names of Wilfred Stevenson, Michael Stone, and Adriana Amaya-Abella; a driver's license for Davion Butler; a credit union ATM/check card for Amy Sindicic; Chase Bank correspondence for Arcelia Galan; and bills and bank correspondence for Ivory Lang.

Amaya-Abella testified at trial that the identification card in her name found in Guion's apartment belonged to her, she had lost it in San Leandro in or before 2004, and Guion did not have her consent to possess it.

Guion testified in her own behalf, and said she gave White false names because her own driver's license had been suspended. She said a friend she knew only as "Cookie" had left Haile's driver's license at her home. Guion said her son handed the license directly to Officer White, and she thought he had provided her true identification card. She offered various explanations for the items that were found in her home.

B. *Verdicts and Sentence*

At the close of the People's evidence, the court dismissed count 3 following a defense motion under section 1118.1. The jury found Guion guilty on the three remaining counts. The trial court sentenced Guion to the lower term of one year four months in state prison on count 1, along with a concurrent prison term of one year four months on count 2, and a concurrent county jail term of one year on count 4.

Guion filed a timely notice of appeal from the judgment of conviction.

---

[4] At the time of trial, Haile's married name was Haile-Brown.

[5] Guion asserts in her reply brief that there was no evidence the fake license actually contained Haile's driver's license number. This is incorrect.

II. *Discussion*

    A., B.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

    C. *Sufficiency of Evidence of False Personation (Former § 529(3))*

Guion contends the evidence does not support her conviction for false personation under former section 529(3). Former section 529 provides in part: "Every person who falsely personates another in either his or her private or official capacity, and *in such assumed character* either: [¶] 1. Becomes bail or surety for any party in any proceeding whatever, before any court or officer authorized to take such bail or surety; [¶] 2. Verifies, publishes, acknowledges, or proves, in the name of another person, any written instrument, with intent that the same may be recorded, delivered, or used as true; or, [¶] 3. Does any other act whereby, if done by the person falsely personated, he might, in any event, become liable to any suit or prosecution, or to pay any sum of money, or to incur any charge, forfeiture, or penalty, or whereby any benefit might accrue to the party personating, or to any other person; . . . ." (Italics added.) A person who violates section 529 commits either a misdemeanor or a felony.

Guion asserts, in order to establish a violation of former section 529(3), there must be proof she committed some affirmative and distinct act beyond falsely identifying herself to White that might have exposed Haile to liability or produced some benefit to herself,[10] and that the prosecution failed to prove the necessary "additional act." Specifically, she maintains: "[She] gave a false driver's license bearing the personal information of . . . Haile to . . . White. However, [she] *did nothing else while impersonating . . . Haile . . . .* The prosecution urged the jury to convict on the theory that by offering Haile's name to the police, [Guion] subjected [Haile] to civil liability for the automobile accident. The problem with this theory is [that] it collapses the additional act requirement into the false personation requirement." (Italics added.)

    1. *The "Additional Act" Requirement*

    ■  The proper interpretation of former section 529(3) is a question we review de novo. (*People v. Singleton* (2007) 155 Cal.App.4th 1332, 1337 [66

---

*See footnote, *ante*, page 1426.

[10] "Section 529, by referring to impersonation of 'another,' contemplates impersonation of a real or actual (as opposed to fictitious) person. [Citation.]" (*Lee v. Superior Court* (2000) 22 Cal.4th 41, 45 [91 Cal.Rptr.2d 509, 989 P.2d 1277].) Of the false names Guion provided on May 7, 2009, only Haile was proved at trial to be a real person.

Cal.Rptr.3d 738] (*Singleton*).) " 'As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose. [Citation.] We begin by examining the statute's words, giving them a plain and commonsense meaning. [Citation.] . . . .' " (*Casarez, supra*, 203 Cal.App.4th at p. 1182, quoting *People v. Murphy* (2001) 25 Cal.4th 136, 142 [105 Cal.Rptr.2d 387, 19 P.3d 1129].)

■ "Under section 529, it is either a misdemeanor or a felony to falsely impersonate another person and, while doing so, commit an additional act." (*Casarez, supra*, 203 Cal.App.4th at p. 1179, fn. omitted.) "The additional act may be one of three types, as the statute provided." (*Ibid.*) Section 529 is clear that the prohibited act is not only separate from the false personation, but may not occur before the falsehood; the act must occur while "in such assumed character."

Although the People do not dispute Guion's construction of former section 529, the dissent contends she misinterprets the statute, and no additional act is required beyond a misidentification that, in context, exposes the one falsely personated to liability or creates the benefit specified. (Conc. & dis. opn., *post*, at pp. 1437–1438, 1440, 1447.) According to the dissent, Guion violated former section 529(3) because her false identification triggered a potential liability for Haile for the accident that preceded the falsehood. The dissent's interpretation is contrary to the language of the statute and the cases that have interpreted it.

In *People v. Robertson* (1990) 223 Cal.App.3d 1277, 1279 [273 Cal.Rptr. 209] (*Robertson*), the defendant was convicted of false personation under former section 529(3) after falsely identifying himself to police as his brother when he was caught stealing a truck. (*Robertson* at p. 1279.) In evaluating the elements of former section 529(3), the court stated, "*in addition* to the act of impersonation itself [there must be] an 'act' which, had it been done by the person falsely personated, might have subjected that person to either a suit or some kind of debt or fine; or which benefitted the defendant or 'any other person' in some way." (223 Cal.App.3d at p. 1281, italics added.) The court concluded the additional act requirement had been met, as the defendant not only falsely identified himself in the first instance, but continued masquerading as his brother throughout his arraignment, signed his brother's name to a booking form and an own-recognizance release form, and failed to appear at a scheduled hearing, resulting in the issuance of a bench warrant for his brother's arrest.

In *People v. Cole* (1994) 23 Cal.App.4th 1672 [28 Cal.Rptr.2d 788] (*Cole*), the defendant was arrested for burglary and gave the officer a false name and birth date. (*Id.* at p. 1674.) Under the dissent's reasoning, this alone should

satisfy the requirements of former section 529(3); providing another person's name might assist the arrestee in avoiding or delaying the consequences of his crime and might cause the other person's arrest and incarceration. But the court in *Cole* reversed the defendant's conviction for false personation because no separate act was committed *while the arrestee was acting in his false role.* (*Cole,* at pp. 1675–1676, relying on *Robertson, supra,* 223 Cal.App.3d 1277.)

In *People v. Chardon* (1999) 77 Cal.App.4th 205 [91 Cal.Rptr.2d 438], the defendant was convicted of false personation under former section 529(3) after falsely identifying herself to police as her sister when she was stopped for speeding with a suspended license. (*Chardon, supra,* 77 Cal.App.4th at pp. 208–209 [91 Cal.Rptr.2d 438].) She relied on *Cole,* arguing her acts were all " 'part of the act of providing the false information' and did not include 'any other act' which would expose her sister to liability." (*Id.* at p. 212.) The court disagreed, finding that, after initially providing false identification information to the officer, the defendant engaged in an additional act that exposed her sister to further criminal liability by signing her sister's name "to the citation's promise to appear." (*Ibid.*)

In *People v. Stacy* (2010) 183 Cal.App.4th 1229 [108 Cal.Rptr.3d 312] (*Stacy*), the defendant provided her cousin's name and an incorrect birth date to a police officer following her detention for driving under the influence. (*Id.* at p. 1234.) Despite the officer's repeated requests that she provide her true name, the defendant maintained her false identity. (*Id.* at p. 1232.) While in that "assumed character," she refused to complete a required second breathalyzer test or provide a blood sample, even though she was advised her refusal to complete these tests would result in the automatic suspension of her driver's license. (*Id.* at pp. 1232–1233.) Subsequently, the police established the defendant's true identity. (*Id.* at p. 1233.) On appeal, the defendant argued there was insufficient evidence she committed another act beyond falsely identifying herself. (*Id.* at p. 1235.) The court disagreed: "Under [former section 529(3)], it is a felony to impersonate another person, and, *while doing so,* commit any other act that (1) if done by the person being impersonated, might cause that person liability for any prosecution, or (2) might benefit the impersonator in some way." (*Stacy* at p. 1234, italics added, fn. omitted.) "The additional act required by section 529 is something beyond, or compounding, the initial false personation to the arresting officer; it must be more than simply providing information regarding the false identity." (*Id.* at p. 1235.) The court found sufficient evidence to convict the defendant on the charge of false personation because she "refused to complete the mandatory second breath test or consent to having her blood drawn" and "[h]er refusal to complete the chemical testing, while acting as [her cousin], put [her cousin] at risk of liability for refusing to submit to and/or complete the chemical testing requirements" under the Vehicle Code. (*Ibid.*)

Finally, the court in *Casarez* considered the sufficiency of the evidence to sustain a conviction for false personation in the absence of an act committed while in the assumed character. In that case, the defendant provided a false name and birth certificate to avoid being taken into custody on an outstanding warrant, but the court found insufficient evidence to sustain the conviction because he did not *use* the false identity in one of the ways listed in the statute. (*Casarez, supra,* 203 Cal.App.4th at pp. 1178, 1190, 1192.) In so holding, the court undertook an extensive review of section 529 in the context of the statutory scheme and the cases considering that provision. The court explained, "Without an additional act, the mere impersonation generally constitutes only a misdemeanor," noting that a contrary construction would render section 529 duplicative of other penal statutes making false personation a misdemeanor. (*Casarez,* at pp. 1190, 1192; see, e.g., §§ 529a [offering a false birth certificate with the intent to represent oneself as another person], 529.5 [possessing a fake driver's license], 529.7 [possessing an official driver's license to which one is not entitled], 148.9 [falsely identifying oneself to a peace officer during a lawful detention or arrest in order to evade proper identification].) The *Casarez* court stated: "We assume the Legislature had section 529 in mind when it later added sections 529a, 529.5, and 529.7—purposely defining new misdemeanor crimes that are distinguishable from section 529 *and its additional act requirement.* Creating a misdemeanor in section 529a that already existed as a felony in section 529, its nearest neighbor, would have been an utterly irrational legislative act. We will not attribute such a senseless absurdity to the Legislature. [Citation.]" (*Casarez,* at p. 1192, italics added.)

■ As these decisions make clear, former section 529(3) requires more than "proof that the defendant falsely personated another real person in a context that exposed the impersonated individual to potential liability or provided someone a relevant benefit," as the dissent would hold (conc. & dis. opn., *post,* at p. 1447); it requires an act separate from the false identification that occurred while the defendant was acting "in such assumed character."[11]

### 2. The Sufficiency of the Evidence to Show an "Additional Act" by Guion

The People accept our interpretation of the statute, but contend the evidence shows Guion committed the requisite additional act. Once the statute is construed, the question of whether the evidence presented at trial is

---

[11] The dissent distinguishes this line of cases on the basis that they all derive from *Robertson*'s effort to decide a statutory preemption issue, which is not presented here. (Conc. & dis. opn., *post,* at pp. 1444–1445.) Although *Robertson* addressed a preemption issue, the additional act requirement recognized by that decision and its progeny does not turn on the preemption question.

sufficient to establish a violation of the statute, as so construed, is subject to deferential review. (*Casarez, supra*, 203 Cal.App.4th at p. 1182.) Our "task is to 'review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]" (*Singleton, supra*, 155 Cal.App.4th at p. 1339.) The People argue, "[Guion] did more than orally identify herself as Jean Haile. After . . . White performed a [computer] check on the name and found no match, [Guion] called her son, who arrived at the scene with Haile's driver's license. When [Guion] produced the driver's license, Haile was potentially exposed to liability for the car accident . . . . When [Guion] presented the license, the violation of section 529 was complete." Thus, the People contend, in effect, that the statute's requirement of a separate act following the false personation was satisfied by the additional effort undertaken by Guion to substantiate her oral misidentification.

The court in *Cole* rejected a similar contention. While sitting in the patrol car after his arrest for burglary, the defendant in that case falsely identified himself as "Larry Quesenberry" and provided Quesenberry's birth date. (*Cole, supra*, 23 Cal.App.4th at p. 1674.) After a computer check, the officer asked the defendant if his middle name was "Ray," and he falsely responded that it was. (*Ibid.*) The court concluded the defendant's conduct did not violate section 529: "[G]iving a false birth date and middle name was no more than part of the act of providing the false information upon which the false identity was based. Each statement made in the course of providing contemporaneous statements amounting to false identification logically cannot be construed as separate acts compounding each prior statement." (*Cole*, at p. 1676; see *Casarez, supra*, 203 Cal.App.4th at pp. 1191–1192 ["[S]ection 529 requires an additional act beyond . . . false identifications to elevate the crime to a felony, and that act must be more than merely offering an identifying document, such as a driver's license or birth certificate to support the impersonator's false claim of identity."].)

■ Accordingly, we hold former section 529(3) requires proof of an act committed by Guion, while she was in her false role, that might have caused Haile liability or provided benefit to Guion. Because there is no substantial evidence that this occurred, Guion's conviction on count 1 cannot stand.

### 3. *The Proper Disposition on Count 1*

■ We asked the parties for supplemental briefing regarding the appropriate disposition if we concluded Guion's conviction of false personation was not supported by the evidence. In response, the People cited section 148.9,

subdivision (a) and *Cole, supra,* 23 Cal.App.4th at pp. 1675–1677, contending we should "modify the judgment to reflect a conviction of the lesser included offense of false identification to an officer during a lawful detention or arrest to evade proper identification." Guion argues that the proper remedy is to simply reverse the conviction because "section 148.9 is not a lesser included offense" of section 529 and the court therefore lacks authority to modify the judgment in this manner. We agree with Guion. Section 1181, subdivision 6 allows a reviewing court to modify the verdict without ordering a new trial "[w]hen the verdict . . . is contrary to law or evidence [and] the evidence shows the defendant to be not guilty of the degree of the crime of which he [or she] was convicted, but guilty of . . . a lesser crime included therein . . . ." ■ In California, "a lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser. [Citations.]" (*People v. Birks* (1998) 19 Cal.4th 108, 117–118 [77 Cal.Rptr.2d 848, 960 P.2d 1073].) Neither test is satisfied here. The statutory elements of former section 529(3)—false personation and the commission of an additional act that might expose the person who is falsely personated to liability or benefit the defendant—do not include all of the elements of section 148.9. (See § 148.9, subd. (a) ["Any person who falsely represents or identifies himself or herself as another person . . . to any peace officer . . . upon a lawful detention or arrest of the person, either to evade the process of the court, or to evade the proper identification of the person by the investigating officer is guilty of a misdemeanor."].) The facts alleged in the accusatory pleading in this case restate the statutory language of former section 529(3) and do not include the elements of section 148.9, subdivision (a).

In *Cole, supra,* 23 Cal.App.4th 1672, the court imposed the disposition sought by the People in this case. *Cole* reversed a conviction for false personation and directed the trial court to enter a judgment of conviction for a violation of section 148.9. Because *Cole* did not provide any legal authority or analysis supporting its disposition and simply concluded the record supported such a conviction, we decline to follow it.

We therefore deny the People's request to modify the judgment and reverse Guion's conviction on count 1.

### III. *Disposition*

The judgment of conviction is reversed as to counts 1 and 4, and the matter is remanded to the trial court for retrial of count 4 and resentencing. In all other respects, the judgment is affirmed.

Needham, J., concurred.

**BRUINIERS, J., Concurring and dissenting.**—I concur in the majority's reversal of Dellreitta Guion's conviction under Penal Code section 530.5, subdivision (c)(1)[1] and its rejection of Guion's claim that she was improperly denied a continuance of her trial date. I respectfully dissent from the majority's reversal of Guion's conviction under section 529, former subdivision 3 (former section 529(3))[2] because I disagree with the majority's interpretation and application of the statute.

Former section 529 provided: "Every person who falsely personates another in either his private or official capacity, and in such assumed character either: [¶] 1. Becomes bail or surety for any party in any proceeding whatever, before any court or officer authorized to take such bail or surety; [¶] 2. Verifies, publishes, acknowledges, or proves, in the name of another person, any written instrument, with intent that the same may be recorded, delivered, or used as true; or, [¶] 3. Does any other act whereby, if done by the person falsely personated, he might, in any event, become liable to any suit or prosecution, or to pay any sum of money, or to incur any charge, forfeiture, or penalty, or whereby any benefit might accrue to the party personating, or to any other person; [¶] Is punishable by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment in the state prison, or in a county jail not exceeding one year, or by both such fine and imprisonment."[3]

My disagreement with the majority's reading of the statute is subtle. I agree that, consistent with the plain language of the statute, something more than simple false personation is required to establish a violation. I disagree that the additional requirement is a distinct physical act that must *follow* the act of false personation; rather, false personation *in a context* that results in the prohibited acts listed in section 529, former subdivisions 1–3 also violates the statute. This interpretation is harmonious with the statutory scheme (including §§ 148.9, 529a, 529.5, 529.7) and is consistent with the result

---

[1] All statutory references are to the Penal Code unless otherwise noted.

[2] Following the majority opinion's approach, I cite to the version of section 529 (Stats. 1983, ch. 1092, § 296, p. 4050) in effect at the time of Guion's offense.

[3] Current section 529 (Stats. 2011, ch. 15, § 381) is substantively identical: "(a) Every person who falsely personates another in either his or her private or official capacity, and in that assumed character does any of the following, is punishable pursuant to subdivision (b): [¶] (1) Becomes bail or surety for any party in any proceeding whatever, before any court or officer authorized to take that bail or surety. [¶] (2) Verifies, publishes, acknowledges, or proves, in the name of another person, any written instrument, with intent that the same may be recorded, delivered, or used as true. [¶] (3) Does any other act whereby, if done by the person falsely personated, he might, in any event, become liable to any suit or prosecution, or to pay any sum of money, or to incur any charge, forfeiture, or penalty, or whereby any benefit might accrue to the party personating, or to any other person. [¶] (b) By a fine not exceeding ten thousand dollars ($10,000), or by imprisonment in a county jail not exceeding one year, or imprisonment pursuant to subdivision (h) of Section 1170, or by both that fine and imprisonment."

reached in prior cases, with the exception of *People v. Cole* (1994) 23 Cal.App.4th 1672 [28 Cal.Rptr.2d 788] (*Cole*).

## I. *Statutory Interpretation*

On a question of statutory interpretation, this court's review is de novo. (*People v. Singleton* (2007) 155 Cal.App.4th 1332, 1337 [66 Cal.Rptr.3d 738].) " 'As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose. [Citation.] We begin by examining the statute's words, giving them a plain and commonsense meaning. [Citation.] We do not, however, consider the statutory language "in isolation." [Citation.] Rather, we look to "the entire substance of the statute . . . in order to determine the scope and purpose of the provision . . . . [Citation.]" [Citation.] That is, we construe the words in question " 'in context, keeping in mind the nature and obvious purpose of the statute . . . .' [Citation.]" [Citation.] We must harmonize "the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole." [Citations.]' [Citation.]" (*People v. Casarez* (2012) 203 Cal.App.4th 1173, 1182 [138 Cal.Rptr.3d 178] (*Casarez*), quoting *People v. Murphy* (2001) 25 Cal.4th 136, 142 [105 Cal.Rptr.2d 387, 19 P.3d 1129].)

### A. *Plain Language of the Statute*

As relevant here, former section 529(3) requires proof that the defendant "falsely personate[d] another" and "in such assumed character" did an act that exposed the impersonated individual to a described liability or provided someone a relevant benefit.[4] Nothing in the plain language of the statute requires the false personation and the conduct that causes liability or benefit to be discrete acts of the defendant that were performed sequentially. A single act that both involved false personation and caused the described liability or benefit should establish a violation of the statute.

---

[4] I refer broadly to a benefit to *someone* because a 1961 case has held that a benefit accruing to even the impersonated individual himself or herself can satisfy the "benefit" requirement of former section 529(3). (See former § 529(3) ["any other act . . . whereby any benefit might accrue to the party personating, or to *any other person*" (italics added)]; *People v. Vaughn* (1961) 196 Cal.App.2d 622, 629 [16 Cal.Rptr. 711] ["any other person" means "any person other than 'the party personating' " and thus may include the impersonated individual himself or herself].)

I refer to the *relevant* benefit because it is an open question whether the "benefit" mentioned in former section 529(3) must be something other than the benefit to the defendant of avoiding identification by a peace officer through false personation of another during an arrest or investigative detention. (See *People v. Lee* (2000) 22 Cal.4th 41, 44 & fn. 2 [91 Cal.Rptr.2d 509, 989 P.2d 1277] (*Lee*) [Supreme Court noting that it declined to grant review of the issue].)

The majority, however, holds that the plain language of former section 529(3) requires an act separate from and following the false identification, relying on the statutory phrase "*in such assumed character*." I disagree. The phrase "in such assumed character" is fully consistent with the simultaneous occurrence of the act of false personation and one of the acts proscribed in section 529, former subdivisions 1, 2 and 3. As an example, one who does the *single act* of signing an affidavit with another person's name while pretending to be the impersonated individual both "falsely personates another" and *in such assumed character* "verifies" a "written instrument" (an act proscribed by § 529, former subd. 2 (former section 529(2))). (See *Casarez, supra*, 203 Cal.App.4th at pp. 1184–1185 [construing "written instrument" to include a written legal document and "verify" to mean " 'confirm or substantiate by oath or affidavit' "]; *People v. Maurin* (1888) 77 Cal. 436, 439 [19 P. 832] [construing "personate" to mean to pretend to others to be in fact another person].) I see no reason why this *single act* would not constitute a violation of the statute. Similarly, a single act of taking possession of property while pretending to be a person entitled to possession of the property would, in my view, constitute a violation of section 529, former subdivision 1 (former section 529(1)). (Cf. *People v. Knox* (1897) 119 Cal. 73, 73–74 [51 P. 19] [person who took custody of child while pretending to be an officer of the law was not guilty of violating former § 529(1) because he did not falsely personate a specific individual (pretended only to have an official capacity), *not* because he committed one rather than two acts].) Similarly, a single act of doing something that potentially imposes liability on the falsely personated individual or provides someone a relevant benefit, when done while impersonating another, should be deemed a violation of former section 529(3).

Under the majority's construction, "and" in the statutory language must be read as "and *then*." The only justification suggested by the majority opinion for this reading is that it is somehow compelled by the phrase "in such assumed character." I simply disagree as a matter of logic and semantics, for the reasons already stated. An act may be committed "in [the] assumed character" of a false personation when it occurs simultaneously with the false personation; it need not *follow* a distinct act of false personation.

Guion raises an additional argument. She seems to argue that the plain language of the phrase "any *other* act" in former section 529(3) (italics added) indicates that an affirmative physical act *in addition to* the act of false personation is required before the subdivision is violated. I disagree. "Other" in the phrase "any other act" can just as logically refer back to the specific acts listed in section 529, former subdivisions 1 and 2, and not to "false personation." Under this reading, section 529 is violated when someone, while falsely impersonating another, either (1) becomes bail or surety, (2) verifies (or does a similar act with respect to) a written instrument, or (3) does any other act (i.e., other than becoming bail or surety or verifying a

written instrument) that potentially exposes the impersonated individual to liability or provides someone a relevant benefit.

In sum, the plain language of the statute is fully consistent with a prohibition of simultaneous performance of an act of false personation and an act proscribed by one of the three former subdivisions. At most, the statutory language is ambiguous.

## B. *Legislative Purpose*

Assuming for purposes of argument that the plain language of former section 529(3) is ambiguous, I consider the appropriate guides to resolving such ambiguity: the legislative purpose of the statute and its statutory context. (*Casarez, supra,* 203 Cal.App.4th at p. 1182.)[5]

"[S]tatutes prohibiting impersonation have two purposes. One is to prevent harm to the person falsely represented; the second is to ensure the integrity of judicial and governmental processes." (*Lee, supra,* 22 Cal.4th at p. 45.) The majority's construction of section 529 does not further these purposes. One who falsely personates another in a context that could expose the impersonated individual to liability harms that person. If the context is a judicial or governmental proceeding, the conduct also undermines the integrity of judicial or governmental process. Nevertheless, under the majority's construction, the perpetrator would be criminally liable only if an additional, and in my view irrelevant, requirement is met: the false personation must precede a discrete act that creates the risk of liability. The majority offers no explanation for why the Legislature would impose such a requirement, which has no apparent relationship to the purposes of the statute. On the contrary, those purposes are best served if the statute is construed to require false personation *in a context* that might expose the impersonated individual to liability regardless of whether one or two discrete acts are involved. Stated differently, the crime is committed when one *uses* the identity of another person *in a manner or in a context* that might result in liability to the other person or a relevant benefit to someone. (See *Casarez, supra,* 203 Cal.App.4th at p. 1190 ["section 529 . . . requires that the impersonator *use*—not just assert—the false identity in one of the ways listed in the three former subdivisions"].)

## C. *Statutory Framework*

Review of the larger statutory framework further persuades me that my construction of former section 529(3) is correct.

---

[5] Although legislative history is also an important guide to statutory interpretation, the Supreme Court has acknowledged that "[u]nsurprisingly, given the antiquity of the statute, there is no available legislative history to assist us in [section 529's] interpretation." (*People v. Rathert* (2000) 24 Cal.4th 200, 204 [99 Cal.Rptr.2d 779, 6 P.3d 700].)

Section 530, which was enacted with section 529 in 1872 and amended in the same manner as section 529 in 1905 (see *Lee, supra,* 22 Cal.4th at p. 46, fn. 5), uses language very similar to the disputed language of section 529. Section 530 provides (and has provided since 1905): *"Every person who falsely personates another,* in either his private or official capacity, *and in such assumed character receives any money or property,* knowing that it is intended to be delivered to the individual so personated, with intent to convert the same to his own use, or to that of another person, or to deprive the true owner thereof, is punishable in the same manner and to the same extent as for larceny of the money or property so received." (Italics added.) Under the majority's construction, this statute would require two distinct acts: first, an act of false personation *and then* the receipt of money or property in such assumed character (with knowledge that it belongs to the impersonated individual and with intent to convert). Thus, a person who committed the *single* act of accepting a delivery of goods intended for another person by falsely acknowledging that he or she was the impersonated individual (and with the requisite knowledge and intent) would not violate the statute, even though his conduct harmed the impersonated individual to the same extent as someone who first falsely personated the owner of the goods and then accepted the property in his or her name. I see no basis for imposing an additional act requirement on section 530, as it would frustrate rather than further the purposes of the false personation statutes, just as the imposition of an additional act requirement frustrates rather than furthers the purposes of former section 529(3).

Other laws that were also enacted together with section 529 in 1872—sections 528 (marriage under false personation), 531 (fraudulent conveyance), 532 (use of fraud to deprive another of property, labor or services), 533 (sale of land that was already sold), 534 (false representation of authority to sell or mortgage property without spouse's consent), 535 (fraudulent sale by auction)—similarly base criminal liability on false representations *in a particular context* and do not require false representation to be followed by a distinct proscribed act. Again, I see no reason why former section 529(3) should be interpreted differently.

The majority cites *Casarez* as authority that former section 529(3) must be construed to impose a two-act requirement in order to harmonize it with a larger statutory scheme. (See *Casarez, supra,* 203 Cal.App.4th at pp. 1190–1192.) *Casarez* compares section 529 to similar statutes that have been enacted in recent decades: (1) section 148.9,[6] which criminalizes false personation to a

---

[6] Section 148.9 provides: "(a) Any person who falsely represents or identifies himself or herself as another person or as a fictitious person to any peace officer listed in Section 830.1 or 830.2, or subdivision (a) of Section 830.33, upon a lawful detention or arrest of the person, either to evade the process of the court, or to evade the proper identification of the person by

peace officer for the purpose of evading detection during a lawful arrest or detention, and (2) sections 529a, 529.5 and 529.7,[7] which criminalize possession or use of false identification. *Casarez* distinguishes these statutes as follows: "section 529 requires more than mere impersonation. It requires that the impersonator *use*—not just assert—the false identity in one of the ways listed in the three former subdivisions." (*Casarez*, at p. 1190.) I agree with this analysis. However, *Casarez* then adopts the phrase "additional act" to describe this *use* requirement. I disagree with that terminology and its implications. The critical distinction between former section 529(3) and the

the investigating officer is guilty of a misdemeanor. [¶] (b) Any person who falsely represents or identifies himself or herself as another person or as a fictitious person to any other peace officer defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2, upon lawful detention or arrest of the person, either to evade the process of the court, or to evade the proper identification of the person by the arresting officer is guilty of a misdemeanor if (1) the false information is given while the peace officer is engaged in the performance of his or her duties as a peace officer and (2) the person providing the false information knows or should have known that the person receiving the information is a peace officer."

[7] Section 529a provides: "Every person who manufactures, produces, sells, offers, or transfers to another any document purporting to be either a certificate of birth or certificate of baptism, knowing such document to be false or counterfeit and with the intent to deceive, is guilty of a crime, and upon conviction therefor, shall be punished by imprisonment in a county jail not to exceed one year, or by imprisonment pursuant to subdivision (h) of Section 1170. Every person who offers, displays, or has in his or her possession any false or counterfeit certificate of birth or certificate of baptism, or any genuine certificate of birth which describes a person then living or deceased, with intent to represent himself or herself as another or to conceal his or her true identity, is guilty of a crime, and upon conviction therefor, shall be punished by imprisonment in the county jail not to exceed one year."

Section 529.5 provides: "(a) Every person who manufactures, sells, offers for sale, or transfers any document, not amounting to counterfeit, purporting to be a government-issued identification card or driver's license, which by virtue of the wording or appearance thereon could reasonably deceive an ordinary person into believing that it is issued by a government agency, and who knows that the document is not a government-issued document, is guilty of a misdemeanor, punishable by imprisonment in a county jail not exceeding one year, or by a fine not exceeding one thousand dollars ($1,000), or by both the fine and imprisonment. [¶] (b) Any person who, having been convicted of a violation of subdivision (a), is subsequently convicted of a violation of subdivision (a), is punishable for the subsequent conviction by imprisonment in a county jail not exceeding one year, or by a fine not exceeding five thousand dollars ($5,000), or by both the fine and imprisonment. [¶] (c) *Any person who possesses a document described in subdivision (a) and who knows that the document is not a government-issued document is guilty of a misdemeanor* punishable by a fine of not less than one thousand dollars ($1,000) and not more than two thousand five hundred dollars ($2,500). . . . [¶] (d) If an offense specified in this section is committed by a person when he or she is under 21 years of age, but is 13 years of age or older, the court also may suspend the person's driving privilege for one year . . . ." (Italics added.)

Section 529.7 provides: "*Any person who obtains*, or assists another person in obtaining, *a driver's license*, identification card, vehicle registration certificate, or any other official document *issued by the Department of Motor Vehicles, with knowledge that the person obtaining the document is not entitled to the document, is guilty of a misdemeanor*, and is punishable by imprisonment in a county jail for up to one year, or a fine of up to one thousand dollars ($1,000), or both." (Italics added.)

other statutes is that it punishes false personation that leads to a particular result—exposure of the impersonated individual to liability or a relevant benefit to someone. The unsupported "additional act" distracts from this core element of former section 529(3) and creates an obstacle to the law's enforcement that is untethered to the language or purpose of the statute.

In sum, I agree with the *Casarez* analysis quoted by the majority as long as the references to an "additional act" requirement are understood to refer to the requirement that the false identity be used in a way that leads to the described liability or benefit: "[W]ithout [section 529's use requirement], . . . mere impersonation generally constitutes only a misdemeanor [under the current statutory scheme]. When, for example, the defendant offers a false birth certificate with the intent to represent himself as another person, he commits a misdemeanor under section 529a. When he possesses a fake driver's license or an official driver's license to which he is not entitled, he commits a misdemeanor under sections 529.5 and 529.7, respectively. And when he falsely identifies himself to an officer during a lawful detention or arrest to evade proper identification by the officer, he commits a misdemeanor under section 148.9. Former section 529 requires [more than] these false identifications to elevate the crime to a felony[; that is,] more than merely offering an identifying document, such as a driver's license or birth certificate to support the impersonator's false claim of identity." (*Casarez, supra*, 203 Cal.App.4th at pp. 1190–1192, fns. omitted.)

The facts of *Casarez* illustrate that, under my construction of former section 529(3), there remains a meaningful distinction between that statute and sections 148.9, 529a, 529.5 and 529.7 even without an additional act requirement. In *Casarez*, the defendant was a passenger in a car that was pulled over by a police officer. The officer suspected (correctly) that the defendant had an outstanding warrant and asked the defendant to identify himself. The defendant provided his brother's name and produced his brother's birth certificate as identification. The appellate court properly concluded the defendant was not guilty of violating section 529. (*Casarez, supra*, 203 Cal.App.4th at pp. 1177–1178.) The defendant falsely identified himself to the officer for the purpose of evading proper identification during the officer's investigation into whether he had an outstanding warrant. Thus, he apparently violated section 148.9. (§ 148.9, subd. (a) (section 148.9(a)); see *Casarez*, at pp. 1179–1180 & fn. 4, 1191 & fn. 11 [implying the defendant violated § 148.9, but not former § 529(2)].) However, the defendant did not perform this act of false personation[8] *in a context* that might impose liability on his brother. The defendant was being questioned about a crime he was already identified as having

---

[8] Although the use of even a fictitious name may constitute a violation of section 148.9(a) (see § 148.9(a) ["Any person who falsely represents or identifies himself or herself as another person or as a fictitious person . . . ."]), the defendant in *Casarez* used the name of a real

committed, rather than a crime that he had just committed, which might have been attributed to his brother. The outstanding warrant was in the defendant's name, not his brother's name. Therefore, the defendant's act of false personation did not expose his brother to potential liability.[9]

### D. Case Law Recognizing a Two-act Requirement in Section 529

The source of the additional act requirement adopted by the majority is a line of case law that originates in a 1990 decision of this district, *Robertson, supra,* 223 Cal.App.3d 1277. I do not find the cases persuasive on the issue of whether two discrete and sequential acts are required to establish a violation of former section 529(3). The two-act language in these cases derives from *Robertson*'s effort to distinguish the elements of section 148.9(a) and former section 529(3) in order to decide a statutory preemption issue.[10] While I agree with *Robertson*'s statutory preemption ruling, I believe the court adopted overbroad "additional act" language in deciding the issue. This error has been repeated in subsequent cases, resulting in an unnecessary and unjustified requirement in establishing a violation of former section 529(3). Nevertheless, I agree with the outcome of these cases with the single exception of *Cole, supra,* 23 Cal.App.4th 1672. Thus, contrary to the majority's implication, my construction of former section 529(3) does not work a significant disruption in settled California law.

The five relevant cases are: *Robertson, supra,* 223 Cal.App.3d 1277; *Cole, supra,* 23 Cal.App.4th 1672; *People v. Chardon* (1999) 77 Cal.App.4th 205 [91 Cal.Rptr.2d 438] *(Chardon); People v. Stacy* (2010) 183 Cal.App.4th 1229 [108 Cal.Rptr.3d 312] *(Stacy);* and *Casarez, supra,* 203 Cal.App.4th 1173.

In *Robertson,* the defendant used his brother's name when he was asked to identify himself upon arrest. When later released from custody, he signed his

person, his brother. Thus, his act of false self-identification constituted "false personation" under section 529, which requires impersonation of a real rather than a fictitious person. (See *Lee, supra,* 22 Cal.4th at p. 45.)

[9] In this and my later discussion of the differences between section 148.9(a) and former section 529(3), I assume that the "benefit" mentioned in the latter statute must be something different from the benefit achieved by violating section 148.9(a), i.e., evading service of process or proper identification by a peace officer during an investigation. Such an understanding is implicit in *People v. Robertson* (1990) 223 Cal.App.3d 1277, 1281 [273 Cal.Rptr. 209] *(Robertson),* discussed further *post.* As noted *ante,* the Supreme Court has not yet ruled on this issue. (See *Lee, supra,* 22 Cal.4th at p. 44, fn. 2 [noting that it declined to grant review of the issue].)

[10] The majority contends that the reasoning and results of the *Robertson* line of cases do not turn on the issue of statutory preemption. But I believe the effort to distinguish the elements of former section 529(3) from the elements of section 148.9(a) led these courts to erroneously focus on an *act* involved in a violation of former section 529(3) that is not required for a violation of section 148.9(a).

brother's name on a booking form and on an own-recognizance release form. All of these acts exposed the brother to possible prosecution. (*Robertson, supra,* 223 Cal.App.3d at p. 1279.) After the defendant failed to appear in court, a bench warrant was issued and the brother was arrested, found incompetent to stand trial, committed to a state hospital, and held in custody for about 18 months before the [false] impersonation was discovered. (*Id.* at p. 1282.) The defendant did not dispute that he had violated former section 529(3), but only argued that under statutory preemption principles he could only be convicted of violating section 148.9(a). (*Robertson,* at pp. 1279–1280.) The *Robertson* court rejected the preemption argument in part because former section 529(3) contained elements not required to prove a violation of section 148.9(a). (*Robertson,* at pp. 1281–1282.) "[I]n addition to the act of [false] impersonation itself [there must be] an 'act' which, had it been done by the person falsely personated, might have subjected that person to either a suit or some kind of debt or fine; or which benefitted the defendant or 'any other person' in some way." (*Id.* at p. 1281.)

The court held that this additional "act" was established by the evidence, observing that the "initial falsehood on appellant's part was compounded many times by what happened thereafter," and that "as a result of appellant's impersonation of his brother, the brother was unjustly incarcerated for a year and a half." (*Robertson, supra,* 223 Cal.App.3d at pp. 1282–1283.) In other words, the court observed both (1) that the defendant performed many acts of false personation and (2) that the false personation caused his brother to suffer severe liability. (*Ibid.*) In my view, the fact that the false personation took place in a context that exposed the brother to liability was sufficient alone to establish a violation of former section 529(3), regardless of how many different acts that the defendant committed thereafter, and that the defendant's *initial* act of providing his brother's name to the arresting officer, which exposed his brother to criminal liability for the charged crime, was sufficient to establish a violation of former section 529(3). I concur in the result of *Robertson,* therefore, but disagree with its language that suggests there must be separate and sequential acts to establish a violation of former section 529(3).

In *Cole,* the defendant provided his arresting officer with a false name and birth date. "When the officer ran a computer check of the name and date of birth, the middle name 'Ray' appeared; [the defendant] responded affirmatively when the officer asked him if 'Ray' was his middle name." On these facts, the defendant was convicted of felony violation of former section 529(3). (*Cole, supra,* 23 Cal.App.4th at p. 1674.) The defendant challenged the conviction, citing *Robertson, supra,* 223 Cal.App.3d at page 1281, and arguing there was "no evidence of an act in addition to that of falsely identifying himself to the arresting officer." The People cited the defendant's acts of providing a birth date and confirming a middle name as the requisite

additional acts. (*Cole*, at p. 1675.) The appellate court reversed, reading *Robertson* to require affirmative acts that were distinct from the act or acts of false personation and that compounded the effects of the false personation. (*Cole*, at pp. 1675–1676 ["abundantly clear from the record in *Robertson* that [the *Robertson*] defendant engaged in acts in addition to the act of providing false identification to a police officer"; "giving a false birth date and middle name was no more than part of the [*Cole* defendant's] act of providing the false information upon which the false identity was based"].) In my view, the *Cole* court erred by searching for separate *acts* that followed false personation, rather than focusing on the crux of the statute: whether the defendant's false personation conduct imposed a potential *liability* on someone or provided a relevant potential *benefit*. *Cole* thus exemplifies a significant problem with the two-act construction of former section 529(3): it diverts courts' attention from the issues that really matter in establishing a violation of former section 529(3). Assuming the impersonated individual in *Cole* was a real person, the *Cole* defendant's *initial* act of falsely identifying himself to the arresting officer was sufficient alone to establish a violation of former section 529(3), even though it also established a violation of section 148.9(a). In my view, therefore, the *Cole* court erred in reversing the former section 529(3) conviction.

In *Chardon*, the defendant's car was pulled over after she was observed driving at a speed of 95 miles per hour. The defendant gave her sister's name when the detaining officer asked her to identify herself, provided her sister's middle name and birth date, and signed her sister's name to a promise to appear on a citation. She was convicted of violating section 529. (*Chardon, supra*, 77 Cal.App.4th at pp. 208–210.) The appellate court distinguished *Cole* and affirmed the conviction because "defendant here engaged in an *additional* act of false personation which exposed her sister to further criminal liability" when she signed the citation's promise to appear, "which exposed her sister not only to liability for the citation but also to potential criminal liability for failing to appear at the scheduled hearing." (*Id.* at p. 212.) I agree with the result in *Chardon*, but not all of its reasoning. *Chardon* appropriately focused on the manner in which the defendant's conduct exposed the impersonated individual to potential liability. However, the court's effort to identify a distinct act additional to the initial act of false personation was unnecessary. In my view, the defendant's *initial* act of providing her sister's name to the detaining officer, who had observed her driving 95 miles an hour, exposed her sister to potential criminal liability and was sufficient to establish a violation of former section 529(3).

In *Stacy, supra*, 183 Cal.App.4th 1229, the defendant was pulled over after she was observed committing several traffic violations. The detaining officer noticed a strong odor of alcohol on her breath and slurred speech when she spoke. The defendant identified herself to the officer using someone else's

name and birth date. While she was being taken to jail, she gave an officer a driver's license in that person's name. Once at jail, she refused to complete a required second breathalyzer test or provide a blood sample, which could have resulted in the suspension of the impersonated individual's driver's license. She was convicted of violating section 529. (*Stacy*, at pp. 1231–1233.) The court affirmed the conviction, holding that the defendant's act of refusing to undergo the mandatory second breath test or provide blood sample put the impersonated individual at risk of a license suspension and thus satisfied the additional act requirement described in *Cole* and *Chardon*. (*Stacy*, at pp. 1235–1236.) Again, I agree with the result in *Stacy*, but I disagree that the conviction could only be upheld based on proof of that second act. The defendant's initial act of falsely identifying herself to the detaining officer, who had observed her driving in an intoxicated state, exposed the impersonated individual to liability and satisfied the requirements of the statute.

I have already explained why I agree with the result in *Casarez, supra*, 203 Cal.App.4th 1173, but disagree with some of its reasoning.

In sum, I read former section 529(3) to require proof that the defendant falsely personated another real person in a context that exposed the impersonated individual to potential liability or provided someone a relevant benefit. There is no basis in the statutory language, purpose or framework to require proof of a discrete act *following* an act of false personation that gives rise to the described liability or benefit.

## II. *Sufficiency of the Evidence*

Based on my construction of former section 529(3), I would reject Guion's sufficiency of the evidence claim and affirm her conviction under the statute.

Whether the evidence presented at trial was sufficient to establish a violation of the statute under a proper construction of the statute is subject to deferential review. (*People v. Singleton, supra*, 155 Cal.App.4th at p. 1339.) When reviewing the sufficiency of the evidence to support a conviction, our "task is to 'review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]" (*Ibid.*)

Guion exposed Haile to potential civil liability by falsely impersonating Haile during a police investigation into a car collision. Indeed, both the prosecutor and defense counsel argued in closing that the relevant "liability" for the former section 529(3) charge was the driver's potential civil liability

for the car crash. By falsely personating Haile in a context that exposed Haile to this potential liability, Guion violated former section 529(3). Her conviction for this offense should be affirmed.