Filed 2/25/15  P. v. Wagner CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JONATHAN WAGNER,<br><br>    Defendant and Appellant. | B253461<br><br>(Los Angeles County<br>Super. Ct. No. LA074557) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Christine Ewell, Judge.  Reversed in part and remanded for resentencing.

Laurie Wilmore, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Margaret E. Maxwell and Douglas L. Wilson, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Jonathan Wagner was convicted of false personation (Pen. Code,[1] § 529, subd. (a)(3)); grand theft (§ 484e, subd. (d)); two counts of identity theft (§ 530.5, subd. (a)); and forgery (§ 475, subd. (a). He argues that the evidence was insufficient to support his convictions on several counts, and he also requests review of the trial court's determination regarding the discovery of personnel records of law enforcement officers involved in the case. In a supplemental brief, Wagner raises arguments concerning the impact of Proposition 47 on his convictions on three counts. We reverse the conviction for false personation and remand the matter for resentencing.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 28, 2013, Los Angeles Police Department officers Berzon Distor and Cynthia Wada conducted a routine check at the Carlton Motel in Studio City. While in the registration office, Distor saw Wagner abruptly leave the area and enter a motel room upon spotting the police. The officers obtained the registration for that motel room and then knocked on the door.

A woman opened the door, let the police in, and whispered to them, "He's in there," apparently referring to the bathroom. Distor ordered Wagner to exit the bathroom, and when Wagner did so, Wada asked him for his name and identification. Wagner gave his name as "Matthew Wardlow," but Distor noticed a tattoo on Wagner's arm that read, "Wagner." Wagner was detained pending further investigation of his identity. While being detained, Wagner told Distor, "I gave your partner a different name because I'm wanted by [the] federal marshal."

The police searched the motel room. In a corner of the bathroom, Distor found a Samsung cell phone box, and on the bathroom floor next to the toilet, a backpack. The toilet had papers in it, as though someone had tried to flush them down. Under the bed was a plastic binder with a wallet holding identification, credit cards, and blank checks.

---

[1]     Unless otherwise indicated, all further statutory references are to the Penal Code.

A Samsung cell phone was also found in the room, and Wagner indicated that it was his. Photo paper was also recovered from the room.

The backpack recovered from the room contained a computer, printer, and flash drive. Inside the Samsung box the police found several credit cards bearing different names, checks, and a checkbook. One item in the box was a MasterCard in the name of Matthew Wardlow. Three checks bore the name Adorina Yengejeh, and a check with Yengejeh's name was found inside a checkbook. Police also found in the Samsung box a vehicle sales person license in the name of Martin Andernians. A check relating to an account in the name of Yehudith Gal, check number 2166 for $293, was recovered from Wagner's sock. In all, 44 items were booked into evidence. Wagner and his companion were arrested.

After Wagner waived his rights under *Miranda v. Arizona* (1966) 384 U.S. 436 Distor asked about the Samsung box. Wagner said that the box came with the cell phone he purchased. Wagner refused to answer questions about the items inside the Samsung box. When asked about the check found in his sock, Wagner said that he received it as payment for a job.

Wagner was charged with false personation of Matthew Wardlow; theft by means of possessing access card information; identity theft of Wardlow and Edgar Nikolyan; two counts of possession of a forged driver's license (§ 470b); and two counts of forgery.

At trial, Distor testified concerning the apprehension and arrest of Wagner, as well as the search of the motel room. Los Angeles Police Department officer John Fischer described the contents of the flash drive found in Wagner's backpack. Fischer found digital images of an identification card with a name on it, tax returns belonging to a person other than the person named on the identification card, partially written checks, business logos, a notary stamp that could be modified, and numerous other documents containing personal identifying information such as Social Security numbers, telephone numbers, and addresses. There was a digital image of a California driver's license with the name of Edgar Nikolyan and a digital image of a California identification card in the name of Matthew Wardlow. Although there was no testimony at trial about the identity

3

of the person whose picture was on these two cards, Wagner concedes on appeal that they were his photographs.

Nikolyan testified that in June 2013 he began receiving credit cards and bills for online purchases in his name at his address. He contacted police, who showed him a driver's license with his name and address but a photograph of another person. Nikolyan had not given anyone permission to use his name and address. The digital image of a driver's license recovered from the flash drive contained his name and address, but Nikolyan did not recognize the person depicted in the photograph.

Wardlow testified that he had met Wagner at a work furlough program. Wardlow had given Wagner his personal information, including pay stubs and W-2 forms, with the understanding that Wagner would assist him with a refinancing loan. Approximately one year later, Wardlow began receiving credit cards and debit cards in his name for which he had not applied. He had not given Wagner permission to use his personal information to obtain goods, services, or a driver's license. The image of the driver's license had Wardlow's correct name, birth date, and business address. The MasterCard recovered from the motel room bore Wardlow's name but was not a card he had authorized.

Adorina Yengejeh identified the checks recovered from the motel room as belonging to an account she owned. She had lost her checkbook. She did not know Wagner, and she had not given anyone permission to have her checkbook. There had been no unauthorized transactions on that account.

Yehudith Gal testified that the check that was recovered from the hotel room was one that she had written to Nissan for her car lease payment. She had put it outside in her mailbox. The police subsequently contacted her to ask about the check. The amount on the check was the amount she had written, but she had written it to Nissan, not to Jonathan Wagner, the person now listed as payee. Gal did not know Wagner, and she had never paid him money.

Wagner was convicted of false personation, theft, both counts of identity theft, and one count of forgery, relating to Gal's check. The jury deadlocked on the remaining forgery count and the two counts of possession of a forged driver's license, and the court

4

dismissed those charges. Wagner was sentenced to three years eight months in prison. Wagner appeals.

## DISCUSSION

### I. Sufficiency of the Evidence

#### A. Count One

Wagner argues that his conviction on count 1, for false personation, must be reversed for insufficiency of the evidence. "In reviewing a claim for sufficiency of the evidence, we must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime or special circumstance beyond a reasonable doubt. We review the entire record in the light most favorable to the judgment below to determine whether it discloses sufficient evidence—that is, evidence that is reasonable, credible, and of solid value—supporting the decision, and not whether the evidence proves guilt beyond a reasonable doubt. [Citation.] We neither reweigh the evidence nor reevaluate the credibility of witnesses. [Citation.] We presume in support of the judgment the existence of every fact the jury reasonably could deduce from the evidence. [Citation.] If the circumstances reasonably justify the findings made by the trier of fact, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*People v. Jennings* (2010) 50 Cal.4th 616, 638–639.)

Section 529 makes it a criminal offense to falsely personate another in either his or her private or official capacity when in that assumed character the person does, inter alia, "any . . . act whereby, if done by the person falsely personated, he might, in any event, become liable to any suit or prosecution, or to pay any sum of money, or to incur any charge, forfeiture, or penalty, or whereby any benefit might accrue to the party personating, or any other person." (§ 529, subd. (a)(3).) The California Supreme Court has defined the term "personate" as "to pretend or represent oneself to be another" (*Lee v. Superior* Court (2000) 22 Cal.4th 41, 43, fn. 1), and has observed that decisional law

5

"strongly suggest[s]" that this offense "requires a *deliberate effort* to pass oneself off as another." (*People v. Rathert* (2000) 24 Cal.4th 200, 208.) In addition to holding oneself out as another person, the statute "requires an act separate from the false identification that occurred while the defendant was acting 'in such assumed character.'" (*People v. Guion* (2013) 213 Cal.App.4th 1426, 1434.)

Wagner argues that here there was no evidence of any additional act beyond identifying himself as Matthew Wardlow to the police that could constitute the further act required by section 529, subdivision (a)(3) because after he identified himself to the officers as Wardlow he took no further actions in Wardlow's name, and indeed admitted that was a false identity shortly thereafter. The Attorney General does not dispute that if all Wagner did was to identify himself to the police as Wardlow, this would be insufficient to support a conviction for violating section 529, subdivision (a)(3). The Attorney General argues, however, that because Wardlow had given his personal information to Wagner and Wagner possessed a digital image of "a forged driver's license with Wardlow's name and personal information," it is a reasonable inference that Wagner falsely personated Wardlow and committed the additional act of using that persona to obtain the MasterCard; and that additional act might have benefitted Wagner or rendered Wardlow liable for charges or penalties. Alternatively, the Attorney General also argues that the additional act could be Wagner's possession of the image of a forged driver's license in Wardlow's name; and that because Wagner can be inferred to have previously falsely personated Wardlow, Wagner's false identification of himself as Wardlow to the officers can also be considered an additional act.

We have reviewed the record and conclude that the evidence is insufficient to support a conviction under section 529, subdivision (a)(3). While it appears highly likely from the record that Wagner was preparing to falsely personate Wardlow and to use the MasterCard and identification card to incur charges in his name, there is no evidence in the record that Wagner actually committed a requisite act for a false personation conviction under section 529, subdivision (a)(3) while "in the assumed character" of Wardlow. Contrary to the Attorney General's claim, it is not a reasonable inference from

6

the evidence at trial that Wagner "falsely personated Wardlow and did the additional act of using that persona to obtain the MasterCard" because there was no evidence at trial that Wagner was using Wardlow's persona when he obtained the MasterCard. The prosecution did not present evidence from which it could be concluded that the MasterCard was a card issued by a financial institution—permitting the inference that Wagner had assumed the Wardlow persona to cause its issuance—rather than a counterfeit card, which would require no such adoption of an assumed character. Similarly, there was no evidence that Wagner was acting in an assumed character to obtain the digital image of the California identification card bearing Wardlow's name. Had there been evidence that the card depicted in the image presented to the jury was issued by the Department of Motor Vehicles, the jury could have inferred that Wagner obtained it and that he did so while in the assumed character of Wardlow. There was no such evidence, and indeed, the fact that it was a digital image and that photo paper was recovered in the room tended to suggest not that the identification card was issued to Wagner while he acted in Wardlow's persona but that Wagner or others were creating a counterfeit identification card. Neither the MasterCard nor the digital image of the identification card was therefore sufficient to permit a jury to conclude that Wagner had, while in an assumed character, done any act whereby he could be benefitted or Wardlow harmed.

Wagner falsely identifying himself as Wardlow to the police officers also cannot support the conviction. Mere false identification to the police is not sufficient to establish false personation under section 529, subdivision (a)(3). (*People v. Cole* (1994) 23 Cal.App.4th 1672, 1676; *People v. Casarez* (2012) 203 Cal.App.4th 1173, 1192.) Once Wagner assumed Wardlow's persona with the police officers, he committed no further act that could satisfy section 529, subdivision (a)(3). Wagner did not, for instance, sign a promise to appear as the person he was personating (*People v. Chardon* (1999) 77 Cal.App.4th 205, 212), nor did he refuse to take a breathalyzer test or to undergo a blood test while personating another (*People v. Stacy* (2010) 183 Cal.App.4th 1229, 1235-

1236). The evidence was insufficient to permit a conviction for violation of section 529, subdivision (a)(3).

The remaining question is whether the conviction may be reduced to a violation of section 148.9, subdivision (a), which provides that it is a misdemeanor to falsely represent or identify oneself as another person or as a fictitious person to a peace officer upon a lawful detention or arrest, either to evade the process of the court or to evade the proper identification of the person by the investigating officer. While we have the authority to reduce a conviction to a lesser offense where the evidence supports the lesser but not the charged offense, we can only do so when the lesser offense is necessarily included in the charged offense. (§ 1181, subd. 6.) For purposes of section 1181, subdivision 6, "To qualify as a lesser offense that is necessarily included in another offense, '"all the legal ingredients of the corpus delicti of the lesser offense must be included in the elements of the greater offense."' [Citation.] Stated another way, when a crime cannot be committed without also committing another offense, the latter is necessarily included within the former. [Citations.] An offense is also included within a charged offense '"if the charging allegations of the accusatory pleading include language describing the offense in such a way that if committed as specified the lesser offense is necessarily committed."' [Citation.]" (*People v. Lagunas* (1994) 8 Cal.4th 1030, 1034.)

Neither test is satisfied here. The elements of section 529, subdivision (a)(3) are false personation and the commission of an additional act while in that persona that could expose the person who is falsely personated to liability or benefit the defendant. Section 148.9, subdivision (a) includes other elements not necessary for a violation of section 529, subdivision (a)(3): false representation or identification as another person or as a fictitious person to a peace officer upon a lawful detention or arrest, either to evade the process of the court or to evade the proper identification of the person by the investigating officer. As a result, false personation under section 529, subdivision (a)(3) can be committed without also violating section 148.9, subdivision (a). Turning to the accusatory pleading in this case, the facts alleged in the information restate the statutory

8

language of section 529, subdivision (a)(3) and do not include the elements of section 148.9, subdivision (a).

We acknowledge that in *People v. Cole*, *supra*, 23 Cal.App.4th at pages 1676 through 1677, the court reduced a felony conviction under section 529, subdivision (a)(3) to a misdemeanor violation of section 148.9, subdivision (a), but it did so without explanation or analysis. We decline to follow that decision and instead agree with the reasoning of the court in *People v. Guion*, in which the court found that a violation of section 148.9, subdivision (a) is not a lesser included offense of a violation of section 529, subdivision (a)(3). (*People v. Guion*, *supra*, 213 Cal.App.4th at pp. 1435-1436.) Accordingly, we reverse the conviction on count 1. As the trial court designated the sentence for this offense to be the principal term at Wagner's sentencing (§ 1170.1, subd. (a)), we remand the matter for resentencing.

### B. Count Two

In count 2, Wagner was convicted of violating section 484e, subdivision (d). This statute provides that "Every person who acquires or retains possession of access card information with respect to an access card validly issued to another person, without the cardholder's or issuer's consent, with the intent to use it fraudulently, is guilty of grand theft." (§ 484e, subd. (d).) The term "access card" is defined broadly by statute (§ 484d, subd. (2)), and the jury was instructed that the People had alleged that Wagner acquired or retained the account information of the following access cards: the check belonging to Gal; the checkbook belonging to Yengejeh; the driver's licenses[2] of Nikolyan and Wardlow; and the MasterCard in Wardlow's name.

Wagner and the Attorney General both agree, and the record demonstrates, that there was evidence that the check belonging to Gal and the checkbook belonging to Yengejeh were validly issued. There was, however, no evidence presented at trial from which the jury could have concluded that the driver's license in Nikolyan's name, the

---

[2] The jury was instructed in terms of driver's licenses although the identification card in question for Wardlow was a California identification card.

9

identification card in Wardlow's name, or the MasterCard were validly issued. No one from a financial institution or the Department of Motor Vehicles testified as to whether the access cards were validly issued by them, and neither Nikolyan nor Wardlow testified that the license or identification card depicted by digital image had been issued to him. Therefore, there was insufficient evidence to support a conviction for grand theft under section 484e based upon Wagner's retention of the access card information with respect to three of the five specific access cards alleged by the prosecution.

With little explanation, Wagner contends that he was deprived of his right to a unanimous jury verdict by the presentation of the three factually inadequate grounds to the jury under section 484e. He admits, however, that the jury was instructed that it "had to unanimously agree on what account information it believed Mr. Wagner possessed," which resolves any issue of unanimity. It appears that Wagner's core argument is not about unanimity but about the distinct issue of the impact of presentation of factually unsupported theories of liability being presented to the jury.

Because the failure here was factual rather than legal, and because the jury was perfectly capable of detecting that the prosecution had failed to present any evidence that the MasterCard, the driver's license, and the identification card were validly issued, reversal is not required here. "If the inadequacy of proof is purely factual, of a kind the jury is fully equipped to detect, reversal is not required whenever a valid ground for the verdict remains, absent an affirmative indication in the record that the verdict actually did rest on the inadequate ground." (*People v. Guiton* (1993) 4 Cal.4th 1116, 1129.) Wagner argues that there was an indication in the record that the jury relied upon the inadequate grounds in reaching its decision on count two, relying upon the questions asked by the jury during deliberations. We have reviewed these questions by the jury and find no affirmative indication that the jury relied on the insufficient ground for its verdict on count 2. The jury's questions pertained to counts 4 and 6, both alleging a violation of section 470b, possession of a forged driver's license. In its first communication, the jury asked two questions: first, whether "an unprinted facsimile" of a driver's license could count as a driver's license; and second, whether it was significant for the purposes of

10

count 4 that the charge referred to a driver's license when the image submitted was an identification card for Wardlow. Next, the jury asked the court to define the difference between the terms "forged" and "fraudulently altered." The jury later requested a readback of the testimony of the officer who presented the contents of the flash drive recovered from the motel room. Finally, the jury asked the court to define "driver's license" as related to count 4, section 470b. While these questions do indicate that "the jury was focused on the driver's licenses," as Wagner argues, the content of questions suggest that their focus pertained not to count 2 but to counts 4 and 6, counts upon which the jury was ultimately unable to reach a verdict. There is no basis for concluding that the jury rested its verdict upon the factually inadequate grounds.

### C. Counts 3 and 5

Counts 3 and 5 were the identity theft charges with respect to Wardlow and Nikolyan. Section 530.5 provides that it is a criminal offense for a person to "willfully obtain[] personal identifying information . . . of another person, and use[] that information for any unlawful purpose, including to obtain, or attempt to obtain, credit, goods, services, real property, or medical information without the consent of that person." Personal identifying information includes, inter alia, one's name, address, and birth date. (§ 530.55, subd. (b).) The "unlawful purpose" required by the statute includes criminal activity as well as "acts prohibited by the common law or nonpenal statutes," and it must be "wrongful by some legal measure, rather than merely a product of an improper, but lawful, purpose or motive." (*In re Rolando S.* (2011) 197 Cal.App.4th 936, 945-946 & fn. 8.)

Wagner's arguments about the sufficiency of the evidence to support the two convictions of identity theft are directed entirely at the question of whether possession of the digital images of the driver's license in Nikolyan's name and the identification card in Wardlow's name were sufficient to prove identity theft. We examine not only the evidence of the digital images but the rest of the evidence at trial and conclude that the two convictions are supported by substantial evidence.

11

Wardlow had not given Wagner permission to use his personal information to obtain goods, services, or a driver's license. Wardlow had given Wagner his personal information for the purpose of Wagner helping Wardlow obtain a refinancing loan. Thereafter Wardlow began receiving credit cards and debit cards in his name for which he had not applied. When apprehended, Wagner possessed both a MasterCard bearing Wardlow's name and a digital image of an identification card with Wardlow's correct name, birth date, and business address but Wagner's photograph. The evidence that Wardlow was receiving credit cards for which he had not applied was sufficient to permit the conclusion that someone was using Wardlow's identity to cause those credit cards to be issued without Wardlow's authorization; and the fact that Wagner had Wardlow's personal information, had a mocked up image of an identification card with Wagner's photo and Wardlow's personal identification, and even possessed a MasterCard in Wardlow's name, all permitted the jury to draw the reasonable inference that Wagner was the one using Wardlow's identity for these purposes.

Similarly, Nikolyan began receiving credit cards for which he had not applied and bills for online purchases made in his name. Nikolyan had not given anyone permission to use his name and address. Wagner was found with the digital image of a California driver's license bearing Nikolyan's name and address and a photograph of Wagner. This evidence permitted the jury to conclude that Wagner was the one who had stolen Nikolyan's identity and was using it for unlawful purposes.

## II. Law Enforcement Personnel Records

Pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d 531, Wagner requested discovery in the trial court of the personnel records of two police officers to the extent that the records pertained to issues of falsity, and the court granted the motion with respect to records over the prior five years. Wagner requests that we review the record of the in camera proceedings for any error.

We have reviewed the sealed record of the proceedings. At the in camera proceedings the custodian of records testified under oath that he had brought all records

pertaining to the two officers over the past five years.  The custodian of records described for the record the nature of each complaint and identified it by number, then handed the complaint to the court for the court's review and determination whether the document was responsive to the *Pitchess* inquiry.  We conclude the trial court appropriately exercised its discretion in determining that none of the documents was relevant to Wagner's case and that no disclosure of material from the officers' personnel files was appropriate.  (*People v. Mooc* (2001) 26 Cal.4th 1216, 1229.)

### III.    Proposition 47

Voters enacted Proposition 47 on November 4, 2014.  It went into effect the next day.  (Cal. Const., art. II, § 10, subd. (a).)  Proposition 47 makes certain drug- and theft-related offenses misdemeanors unless the offenses were committed by certain ineligible defendants.  These offenses had previously been designated as either felonies or wobblers (crimes that can be punished as either felonies or misdemeanors).

By supplemental letter brief, Wagner argues that if this court upholds his conviction in count 2 for violating section 484e, subdivision (d) we should reduce count 2 to a misdemeanor because under section 490.2, added by Proposition 47, his offense would now constitute petty theft rather than grand theft.[3]  Section 490.2 provides, "Notwithstanding Section 487 or any other provision of law defining grand theft, obtaining any property by theft where the value of the money, labor, real or personal property taken does not exceed nine hundred fifty dollars ($950) shall be considered petty theft and shall be punished as a misdemeanor" unless the person is otherwise ineligible for misdemeanor resentencing.

---

[3]    Wagner also makes an argument regarding count 8 that is premised on this court concluding that there was insufficient evidence to support his convictions in counts 3 and 5.  As we have concluded that the convictions in counts 3 and 5 were supported by sufficient evidence, we need not further discuss Wagner's contention.

13

In count 2 the jury concluded that Wagner violated section 484e, subdivision (d), which provides, "Every person who acquires or retains possession of access card account information with respect to an access card validly issued to another person, without the cardholder's or issuer's consent, with the intent to use it fraudulently, is guilty of grand theft." We have concluded above that substantial evidence supported the conviction for a violation for acquiring or retaining account access card information with respect to the check in the amount of $293 belonging to Gal and the checkbook belonging to Yengejeh. No evidence was presented at trial as to the value of this access card account information. Wagner claims that the value of the access card account information he possessed is less than $950 and argues that his crime should therefore be reclassified as a misdemeanor based upon new section 490.2. The Attorney General asserts by letter brief that section 484e has not been affected by Proposition 47 because section 484e was not specifically mentioned in Proposition 47, but fails to address the impact, if any, of the provisions of section 490.2 on section 484e, subdivision (d).

The ordinary remedy for those sentenced before the passage of Proposition 47 to seek relief under its terms is to file a petition for recall of sentence pursuant to section 1170.18. Here, however, we have already determined that Wagner must be resentenced because of the insufficiency of the evidence to support his conviction on count 1, the basis for the principal term at his original sentencing. At resentencing, the trial court shall assess the applicability of Proposition 47 and determine whether, in light of section 490.2, Wagner should be sentenced on count 2 as a felony or as a misdemeanor.

## DISPOSITION

The conviction for false personation (Pen. Code, § 529, subd. (a)(3)) in count 1 is reversed. The matter is remanded for a resentencing hearing at which the court shall consider the effect, if any, of Proposition 47. In all other respects, the judgment is affirmed.


ZELON, J.


We concur:


PERLUSS, P. J.


WOODS, J.


15