Filed 12/29/16

CERTIFIED FOR PARTIAL PUBLICATION*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JOSE LUIS MUNGUIA et al.,<br><br>    Defendants and Appellants. | F070141 & F070169<br><br>(Super. Ct. Nos. BF154754B,<br>BF149270A, BF154754A)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  Gary T. Friedman, Judge.

Derek K. Kowata, under appointment by the Court of Appeal, for Defendant and Appellant Jose Luis Munguia.

Rachel Varnell, under appointment by the Court of Appeal, for Defendant and Appellant Elissa Arambula.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine B. Chatman and Harry Joseph Colombo, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

*        Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I., III., and IV. of the Discussion.

# INTRODUCTION

Codefendants Elissa Arambula, Jose Luis Munguia and Anesia Lucia Ribeiro were charged by amended information with first degree burglary with the intent to commit larceny or any felony, in violation of Penal Code section 460, subdivision (a).[1] As to each defendant, the amended information alleged the offense was a serious felony under section 1192.7, subdivision (c)(18), and a violent felony within the meaning of section 667.5, subdivision (c)(21). As to Munguia, the amended information also alleged he committed the offense while out on bail within the meaning of section 12022.1; had a prior serious felony conviction (§ 667, subd. (a)(1)), and a prior serious and/or violent felony conviction pursuant to the three strikes law (§§ 667, subds. (c)–(j), 1170.12, subds. (a)–(e)); and he served four prior prison terms (§ 667.5, subd. (b)).

Arambula and Munguia were tried together.[2] A jury convicted them of first degree burglary and found true the violent felony enhancement allegation (§ 667.5, subd. (c)(21)).[3] In a bifurcated proceeding as to Munguia, the trial court found true the on-bail enhancement (§ 12022.1), the prior serious felony conviction (§ 667, subd. (a)(1)), the prior strike conviction (§§ 667, subds. (c)–(j), 1170.12, subds. (a)–(e)), and the prior prison terms (§ 667.5, subd. (b)).

At the time of Arambula's arrest for first degree burglary, she was on probation for vehicle theft and the trial court revoked probation. After the jury convicted Arambula of first degree burglary, the court found her in violation of probation and ruled probation would remain revoked. Arambula was sentenced to a determinate prison term of six

---

[1] Further statutory references are to the Penal Code unless otherwise noted.

[2] Ribeiro failed to appear for her trial.

[3] Section 667.5, subsection (c)(21), defines as a violent felony "[a]ny burglary of the first degree, as defined in subdivision (a) of Section 460, wherein it is charged and proved that another person, other than an accomplice, was present in the residence during the commission of the burglary." We refer to this enhancement herein as occupied burglary. (*Doe v. Saenz* (2006) 140 Cal.App.4th 960, 987.)

years (upper term) for the burglary conviction; and various fines and fees were imposed and restitution was ordered. She was sentenced to three years (upper term) for the probation violation, to be served concurrently.

Munguia was sentenced to a determinate prison term of two years eight months (one-third of the midterm, doubled), plus two years for the on-bail enhancement and one year for each of the three prior prison terms; and various fines and fees were imposed and restitution was ordered. His sentence was ordered to run consecutive to the 17-year sentence he received in a separate case, for a total determinate prison term of 24 years 8 months.[4]

On appeal, Arambula argues her conviction is not supported by sufficient evidence on the issues of intent to commit theft and burglary of an inhabited dwelling, and the jury's true finding on occupied burglary enhancement (§ 667.5, subd. (c)(21)) is not supported by sufficient evidence. She seeks the reduction of her conviction from first degree burglary to second degree burglary and to have the occupied burglary enhancement stricken.

Munguia also argues there is insufficient evidence to support his conviction on the issue of burglary of an inhabited dwelling. Additionally, he argues that based on the plain language of section 667.5, subdivision (c)(21), the evidence is insufficient as a matter of law to support the occupied burglary enhancement; and that the trial court committed error when it admitted evidence of his prior burglary conviction under Evidence Code sections 1101, subdivision (b), and 352, and committed instructional error

---

[4]     Munguia was separately convicted of residential robbery (§ 212.5, subd. (a)) and residential burglary (§ 460, subd. (a)) in Kern County Superior Court case No. BF153374B. He was sentenced to 12 years for robbery, plus five years for the prior strike conviction (§ 667, subd. (a)), and 12 years for burglary, stayed (§ 654).

as to the occupied burglary enhancement.[5]  Munguia seeks reversal of his conviction for first degree burglary and to have the occupied burglary enhancement stricken.

We find Arambula's and Munguia's first degree burglary convictions are supported by substantial evidence; the occupied burglary enhancement applies if there is a person other than an accomplice present at any time prior to the perpetrator's final departure from the residence; no prejudice resulted from the admission of Munguia's prior burglary conviction; and no instructional error was committed.  We affirm the judgment.

**FACTUAL SUMMARY**

In 2011, the Bakersfield house Salvador Tejeda owned and lived in with his family was damaged by a fire.[6]  Tejeda and his family moved into a different house in Bakersfield and Tejeda, a general contractor, demolished their damaged home and began rebuilding it.  After the fire, Tejeda's house and his neighbors' houses were a target for thieves.  Juanita Howard, who lived several houses away from Tejeda, began patrolling the neighborhood once in the evening before dark and once in the morning.

In May 2014, Tejeda's house was 95 percent complete and the only work left to be done was in the kitchen.  Although there was no electricity to the house, there was running water and he had furniture worth approximately $100,000 stored in the kitchen and living room.[7]  By then, Tejeda and his wife had separated but he intended to finish the house for his wife and children to live in. Tejeda did not keep clothes or toiletries in the house, but there were mattresses and a comforter present.  He testified that at the time of the burglary, he had been spending the night at the house every other day to every

---

[5]     Munguia also joins in Arambula's arguments to the extent they are of benefit to him. (Cal. Rules of Court, rule 8.200(a)(5).)

[6]     Tejeda testified the fire damaged the attic and the entire roof.  His neighbor, Juanita Howard, testified the house was destroyed by the fire and nothing was salvageable.

[7]     Tejeda had a portable generator he used for electricity.

4.

three days for months, due to the numerous break-in attempts, and he was continuing to stay there periodically.

On the latter point, Howard, who was a defense witness, testified she was aware of Tejeda staying overnight only one or two times. However, she also testified she was not "buddy buddies" with him and would not know if he stayed other times. Additionally, his car was not visible even the one or two times she knew he was staying overnight.

On May 4, 2014, Tejeda was at the house. After locking the windows and doors, he left at approximately 10:30 that night. The next morning, Howard saw the gate to Tejeda's property was down and she called him at approximately 8:00 a.m. to let him know. He drove to the house and saw a window had been forced open. He also noticed that while the deadbolt was locked, the door handle lock was not set. As he always locked both, he concluded someone had unlocked the door handle from the inside.

Tejeda entered the house and noticed the tools he had in the family room near the rear of the house, including a portable table saw, were missing. He then located the table saw and other tools in the living room, near the entrance to the house. He also noticed a small coffee table had been moved from the kitchen to the family room, the wall-to-wall carpet in one of the bedrooms had been pulled back from the walls, the cover over one of the leather sofas had been removed, and blueprints for the house and some miscellaneous items had been moved. Small tools had also been gathered from around the house and placed in a tool bag. Nothing was taken from the house, however.

As Tejeda was walking downstairs, he heard footsteps upstairs. He then exited the house, locked the doors and called the Bakersfield Police Department. As he was waiting outside for the police in front of the house, Howard arrived and watched the back of the property by the alleyway for him.

A vehicle drove up and Munguia, who was driving, got out, approached Tejeda and asked if Tejeda could let his friend, who had been left behind, out of the house. Tejeda said no and told Munguia the police had been called. Munguia started walking

5.

toward his vehicle looking worried.  The police arrived and Munguia drove away.  Tejeda pointed out Munguia's departing vehicle to the police, and Officer Juarez pulled it over several blocks away.  Ribeiro was in the back seat.

Police entered Tejeda's house, announced themselves and began checking rooms. Arambula then called down and let police know she was upstairs.  She came down the stairs and was detained without incident.

Two sets of footprints were located inside the house.  The footprints appeared to have been left by Vans-style shoes and did not match the sandals Arambula was wearing. After being notified of the footprints, Officer Juarez checked Munguia's and Ribeiro's shoes; both were wearing Vans-style shoes.  Juarez transported them back to the house, compared their shoes to the footprints found in the house, and determined the type and size matched Munguia's and Ribeiro's shoes.

Munguia told Officer Juarez that he drove Arambula and Ribeiro to the hospital around 2:30 a.m.  Ribeiro was released a couple of hours later and they drove around for a while.  He got tired and parked on Panorama Drive, where Tejeda's house is located. Munguia admitted Ribeiro entered Tejeda's house through the kitchen window and opened the door for him and Arambula.[8]  He also said he saw Ribeiro and a male subject leave the house carrying tools.  He said he did not know the male subject's name, though, and he could not provide any description of him to Officer Juarez.

## DISCUSSION

### I.     Sufficiency of the Evidence[*]

Arambula contends there is insufficient evidence she had the requisite intent to commit theft because nothing was taken from the house and the prosecution's reliance on

---

[8]     The window was not large but a smaller person could fit through it and Ribeiro was petite.

[*]     See footnote, *ante*, page 1.

the movement of certain items within the house falls short, especially given that Munguia and Ribeiro had left the house without taking anything. She argues the evidence suggests she and her codefendants were merely squatting in the house and moved things around to make themselves more comfortable. In addition, she contends there was no evidence of the time she entered the house and, therefore, there was insufficient evidence supporting the prosecution's aiding and abetting theory.

Further, Arambula and Munguia both argue Tejeda's house was a construction site and not an inhabited dwelling, and Tejeda did not intend to live there once he finished rebuilding it.

The People contend the circumstances of the entry and the movement of items inside the house, damage to the carpet and Munguia's departure with a worried look on his face constitute sufficient evidence of the intent to commit theft; and the jury was not required to accept the alternate explanation offered by the defense. Additionally, the circumstances under which Tejeda and his family moved out of their home, the condition it was in at the time of the burglary, Tejeda's testimony he slept there overnight several times a week, and his intent to move back in support the jury's determination the house was an inhabited dwelling at the time of the burglary.

## A.      Standard of Review

On appeal, the relevant inquiry governing a challenge to the sufficiency of the evidence "'is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1055, cert. den. (2016) ___ U.S. ___ [136 S.Ct. 1714].) "The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value— such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) "In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support

7.

of the judgment the existence of every fact the jury could reasonably have deduced from the evidence." (*Ibid.*) "'[I]t is the jury, not the appellate court which must be convinced of the defendant's guilt ….'" (*People v. Nguyen*, *supra*, at pp. 1055–1056.) "A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict." (*People v. Zamudio*, *supra*, at p. 357.)

## B.     First Degree Burglary

First degree burglary is the entry into an inhabited dwelling with the intent to commit larceny or any felony. (§§ 459, 460.) "'[I]nhabited' means currently being used for dwelling purposes, whether occupied or not. A house … is currently being used for dwelling purposes if, at the time of the burglary, it was not occupied solely because a natural or other disaster caused the occupants to leave the premises." (§ 459; *People v. Harris* (2013) 57 Cal.4th 804, 842; *Magness v. Superior Court* (2012) 54 Cal.4th 270, 273.)

### 1.     Intent to Commit Theft

"Intent to steal is often proved by circumstantial evidence." (*People v. Abilez* (2007) 41 Cal.4th 472, 508; *People v. Frye* (1985) 166 Cal.App.3d 941, 947; *In re Anthony M.* (1981) 116 Cal.App.3d 491, 500–501.) That nothing was ultimately removed from Tejeda's house is immaterial, as theft need not actually be committed. (*People v. Montoya* (1994) 7 Cal.4th 1027, 1041–1042 (*Montoya*); *People v. Frye*, *supra*, at p. 947.)

Arambula relies on *People v. Tidmore* (1963) 218 Cal.App.2d 716 (*Tidmore*) as instructive on the issue of intent, but we find it inapposite. The defendant in *Tidmore* challenged his conviction for burglary with the intent to commit rape, which required "intent to have sexual intercourse with the victim and to use force to overcome her resistance." (*Id.* at p. 720.) The Court of Appeal found the defendant's motive too ambiguous to support the conviction where the defendant knew the victim, said nothing

8.

to her, and only had his head and a hand in the room from outside an open window at the time the victim woke up to the sound of him pushing a dresser aside. (*Id.* at pp. 718, 720.) The victim then screamed, ran to the kitchen to get a knife, and returned to find the defendant gone. (*Id.* at p. 718.) The defendant testified he had hoped to persuade the victim to have sexual intercourse with him and the court found the evidence showed "nothing more … than that he desired to have sexual intercourse with [the victim]. While his conduct was reprehensible, there was no proof that he intended to accomplish his purpose by use of force rather than by persuasion." (*Id.* at p. 720; but see *People v. Bard* (1968) 70 Cal.2d 3, 4–5, 7 [distinguishing *Tidmore* and affirming burglary with intent to commit rape conviction where the defendant entered the house, got into the bed of a complete stranger who was asleep and began fondling her].)

Here, Arambula was not caught as she was merely in the process of entering Tejeda's house, perhaps arguably leaving her intent impermissibly ambiguous. (*Tidmore*, *supra*, 218 Cal.App.2d at p. 720.) To the contrary, she entered into a stranger's house that contained tools and furniture worth approximately $100,000. Between the time Tejeda left at 10:30 p.m. and the time he heard Arambula in the house the next morning at approximately 8:30 a.m., a leather sofa was uncovered, a table was moved, carpeting was pulled back from the wall and tools were gathered from various areas within the house, with some grouped together and bagged. Although Arambula contends the evidence could support an intent to merely squat in the house and make it comfortable, the jury was not required to accept that more benign explanation, as it was not the sole explanation compelled by the evidence.[9] (*People v. Albillar* (2010) 51 Cal.4th 47, 60; *People v. Frye*, *supra*, 166 Cal.App.3d at p. 947.) "We must accept logical inferences that the jury might have drawn from the evidence [even if] we would have concluded

_____

[9] Tejeda testified the sofa that was uncovered had baseboard over it and the baseboard had not been moved, which suggests Arambula, Munguia and Ribeiro were not simply looking to make themselves comfortable.

9.

otherwise." (*People v. Vasquez* (2015) 239 Cal.App.4th 1512, 1517 (*Vasquez*).) Without question, uncovering and moving furniture, pulling back carpet and grouping tools together support a reasonable inference that Arambula, Munguia and Ribeiro were inventorying the house and gathering items together in preparation for a theft.

Regarding at what point Arambula entered the house (see *Montoya*, *supra*, 7 Cal.4th at pp. 1038–1039), while mere presence at the crime scene is insufficient, the evidence was not limited to Arambula's mere presence in Tejeda's house. (*People v. Nguyen*, *supra*, 61 Cal.4th at pp. 1054–1055; *In re Gary F.* (2014) 226 Cal.App.4th 1076, 1080.) The house was empty when Tejeda locked it up at 10:30 p.m. on May 4, 2014, but Arambula was upstairs when Tejeda arrived the next morning. Munguia told Officer Juarez that a couple of hours after 2:30 a.m., he, Arambula and Ribeiro were driving around together and they ended up parking on the street where Tejeda's house is located. Munguia also admitted Ribeiro entered the house through a window and then opened the door for them. After Tejeda locked the house and waited for police to arrive, Munguia drove up, approached Tejeda and asked him if he could let Arambula out. After he said no, Munguia walked away looking worried and left the scene in a vehicle in which Ribeiro was a passenger. Footprints matching Munguia's and Ribeiro's shoes were also found in the house.

This evidence is sufficient to support a jury's determination that Arambula, Munguia and Ribeiro were companions and Arambula was in the house with them, either directly participating in the crime or aiding and abetting a perpetrator of the crime. (*People v. Nguyen*, *supra*, 61 Cal.4th at pp. 1054–1055; *In re Gary F.*, *supra*, 226 Cal.App.4th at p. 1080.) Accordingly, we reject Arambula's claim there was insufficient evidence supporting her burglary conviction as to the element of intent.

## 2. Inhabited Dwelling

What constitutes an "inhabited dwelling" is a question of fact. (*Vasquez*, *supra*, 239 Cal.App.4th at p. 1517; *People v. Burkett* (2013) 220 Cal.App.4th 572, 582 (*Burkett*).) No single factor, including use as sleeping quarters, is dispositive. (*People v. Hughes* (2002) 27 Cal.4th 287, 354–355; *Vasquez*, *supra*, at p. 1517.)

""""Burglary laws are based primarily upon a recognition of the dangers to personal safety created by the usual burglary situation—the danger that the intruder will harm the occupants in attempting to perpetrate the intended crime or to escape and the danger that the occupants will in anger or panic react violently to the invasion, thereby inviting more violence."" [Citation.] 'In addition a burglary of an inhabited dwelling involves an invasion of perhaps the most secret zone of privacy, the place where trinkets, mementos, heirlooms, and the other stuff of personal history are kept. Society therefore has an important interest in seeing to it that burglars stay out of inhabited dwelling houses.'" (*People v. DeRouen* (1995) 38 Cal.App.4th 86, 91, disapproved on another ground by *People v. Allen* (1999) 21 Cal.4th 846, 865–866; *People v. Hughes*, *supra*, 27 Cal.4th at p. 355; *Burkett*, *supra*, 220 Cal.App.4th at p. 579; accord, *People v. Glazier* (2010) 186 Cal.App.4th 1151, 1158, 1161 (*Glazier*).)

"The ""'inhabited-uninhabited' dichotomy turns not on the immediate presence or absence of some person but rather on the character of the use of the building."" [Citation.] '[T]he proper question is whether *the nature of a structure's composition* is such that a reasonable person would expect some protection from unauthorized intrusion.'" (*People v. DeRouen*, *supra*, 38 Cal.App.4th at pp. 91–92; *People v. Hughes*, *supra*, 27 Cal.4th at p. 355.)

"A structure or dwelling 'is "inhabited" if it is currently being used for residential purposes, even if it is temporarily *unoccupied*, i.e., no person is currently present. A formerly inhabited dwelling becomes uninhabited *only when its occupants have moved out permanently and do not intend to return to continue or to resume using the structure*

11.

*as a dwelling.…* [¶] … [¶] … If the person is using the structure as a habitation when the burglary or robbery occurs, his possible intent to abandon the habitation in the future does not alter its character as an inhabited dwelling.'" (*People v. Aguilar* (2010) 181 Cal.App.4th 966, 970–971 (*Aguilar*); *People v. Tessman* (2014) 223 Cal.App.4th 1293, 1299–1300; *People v. Villalobos* (2006) 145 Cal.App.4th 310, 320.)

Thus, a vacation house is an inhabited dwelling (*People v. DeRouen*, *supra*, 38 Cal.App.4th at p. 92), and a house vacated during extensive remodeling remains an inhabited dwelling (*People v. Glazier*, *supra*, 186 Cal.App.4th at p. 1161), as does a dwelling vacated due to fire or other disaster (*Aguilar*, *supra*, 181 Cal.App.4th at pp. 971–972). The house of an elderly owner residing in a skilled nursing facility was found to be an inhabited dwelling, where the owner intended to return, notwithstanding that he may have been taken off life support shortly before his house was burglarized. (*People v. Meredith* (2009) 174 Cal.App.4th 1257, 1259–1260, 1268–1269.) In an analogous situation, this court found that a vacant but furnished and maintained house remained an inhabited dwelling even though the owner had been confined to a boarding residence for the past two and one-half years and there was doubt she would return. (*People v. Marquez* (1983) 143 Cal.App.3d 797, 800–802.) These cases share in common evidence that while the dwellings were unoccupied at the time of the crime, the owners or occupants intended to return and did not abandon their dwellings or intend to leave them permanently.

We take further note of the recent decisions in *Vasquez* and *Burkett*. In *Vasquez*, the Court of Appeal affirmed the defendant's first degree burglary conviction where he broke into a house he had previously rented. (*Vasquez*, *supra*, 239 Cal.App.4th at p. 1514.) The house had been sold following his eviction (*id.* at pp. 1514–1515) and the new owner "was generally in or around the premises of her new home" (*id.* at p. 1517). "She introduced herself to a neighbor, transferred the utilities to her personal accounts, notified creditors of her new address, and began painting and renovating the home."

12.

(*Ibid.*) There were tools and some personal belongings in the house, and she had added window locks to the house. (*Ibid.*) The court found the evidence was sufficient to support the jury's finding the house was an inhabited dwelling, even though the new owner had not yet moved in or started sleeping there. (*Id.* at pp. 1514, 1517.)

In contrast, the Court of Appeal reversed the defendant's first degree burglary conviction in *Burkett*, which also involved a soon to be fully occupied house. (*Burkett*, *supra*, 220 Cal.App.4th at pp.574–575.) The owner had vacated the house years before in what was intended to be a permanent relocation, and he kept the house as a rental property. (*Id.* at pp. 580–581.) After the owner lost the house he moved to in foreclosure proceedings, he gave his tenant notice that he needed to move back into the house she was renting from him. (*Id.* at pp. 575, 580.) The tenant vacated the house and turned off the utilities, but she still had the keys. (*Id.* at p. 575.) The next day, the defendant broke into the empty house and did some damage in the course of stealing various metal items, including sink pipes. (*Id.* at p. 576.) The owner received the keys from his former tenant after the burglary, there was no testimony regarding turning the utilities on, and he moved into the house approximately one week after the burglary. (*Id.* at p. 575.)

In finding the house was not an inhabited dwelling at the time of the burglary, the court concluded the circumstances best fit the rule that "a formerly inhabited dwelling becomes uninhabited when its occupants have moved out permanently and do not intend to return to continue or to resume using the structure as a dwelling." (*Burkett*, *supra*, 220 Cal.App.4th at p. 581, citing *People v. Guthrie* (1983) 144 Cal.App.3d 832, 838–840.) The court considered cases involving "when a current habitation ends" and "when habitation begins," concluding that "none of the indicia [of habitation were] present except for the self-declared intent of the owner to occupy the house in the future." (*Burkett*, *supra*, at pp. 581–582.) Relevant to the decision in *Burkett* was evidence that the owner's original relocation was intended to be permanent and although plans were in place to move back in at the time of the burglary, that was due to a reversal of fortune.

13.

(*Id.* at pp. 580–581.)  Further, the owner "was not resuming occupancy in a home filled with his furnishings after an extended absence," and "[h]e was not shifting back and forth between two homes."[10]  (*Burkett*, *supra*, at p. 581.)

Arambula and Munguia argue that Tejeda's house was merely a construction site, not an inhabited dwelling.  Further, Tejeda was only using it as storage for furniture and tools, and the fact Tejeda spent some nights there to protect his property is not enough to show it was his "home away from home." (*People v. Long* (2010) 189 Cal.App.4th 826, 837.)  They point out that Tejeda tore down the house entirely and had not completed the rebuild at the time of the burglary.  Given the house's demolition, they contend the fire was not the sole cause of the Tejeda family's departure from the house and the natural disaster exception in section 459 does not apply.  Additionally, Tejeda kept no toiletries or other personal items at the house, there was running water but no electricity, his wife and children never returned to the house and he did not intend to move in when construction was completed.

We are not persuaded.  The Tejeda family moved out of their home solely because it was damaged by the fire; they neither abandoned the house nor moved out permanently with no intention of returning.  (*Aguilar*, *supra*, 181 Cal.App.4th at p. 972.)  That Tejeda decided to demolish the house and rebuild it does not alter the fact that the fire forced the family out of their home as an initial matter, and we do not find Arambula's and Munguia's assertion that the disaster provision is inapplicable compelling.  (*Ibid.*)

---

**10**  We observe there is a dissenting opinion in *Burkett*.  The majority opinion focused on the owner's intent when he vacated the house years before and the degree to which he had executed his plan to reoccupy the then vacant house.  The dissenting justice stated "that the house is an inhabited dwelling if, at the time of the burglary, the owner, who lived in the house before, intends to return and make it his home again," and the owner's past intent should not prevail over his present intent, which was to again occupy the house. (*Burkett*, *supra*, 220 Cal.App. at p. 584.)  It is unnecessary for us to decide which path we would follow because the facts in this case differ from those in *Burkett*, with respect to both the owner's intent at the time the dwelling was vacated and the extent of his reoccupancy at the time of the burglary.

14.

Although the rebuilding process spanned a number of years, Tejeda, a general contractor, explained that he was rebuilding it himself and had other projects to schedule around. It is also true that at some point after the fire, there was no dwelling by virtue of its demolition. However, at the time of the burglary, the house was 95 percent rebuilt, with only the kitchen left to finish. While the electricity to the house was not turned on, there was running water, furnishings for the house were present and Tejeda was sleeping there two to three times a week on one of the mattresses. Further, Tejeda continued to receive his mail at the house following the fire and that address remained his address of record with his licensing board.

We also find Arambula's and Munguia's focus on who was going to live in the house in the future misplaced on these facts. Whether Tejeda, he and his family, or just his estranged wife and children ultimately moved in, the house was their family home before the fire and at the time they vacated the house, they planned to move back in once the house was rebuilt. While Tejeda testified he and his wife had since separated, he still owned the house, he was continuing to rebuild it, he was staying there several times a week, and he planned to have his wife and children move back in once it was finished.

Thus, although neither Tejeda nor his family had yet resumed occupancy of the house full time, other factors were present that indicated Tejeda was inhabiting the house at the time of the burglary. We have no difficulty concluding that a reasonable person in Tejada's shoes would have expected some protection from the unauthorized intrusion that occurred, and we find the jury's determination that Arambula and Munguia burglarized an inhabited dwelling was supported by substantial evidence. (*Vasquez*, *supra*, 239 Cal.App.4th at p. 1517; *Glazier*, *supra*, 186 Cal.App.4th at pp. 1160–1161; *Aguilar*, *supra*, 181 Cal.App.4th at p. 972.)

We note that consideration of the concerns underlying first degree burglary— "protection of an occupant's possessory interest in the safe habitation of a building"— further supports our conclusion in this case. (*Glazier*, *supra*, 186 Cal.App.4th at p. 1158;

15.

accord, *Aguilar*, *supra*, 181 Cal.App.4th at p. 970.) Tejeda was sleeping there periodically and when he entered the house on the morning of May 5, 2014, there was an intruder inside and that intruder's two companions returned to the house while he was outside waiting for police. Their actions clearly violated Tejeda's possessory interest in his house and "increased the danger of personal injury and the risk of "'a violent confrontation during a burglary."'" (*Vasquez*, *supra*, 239 Cal.App.4th at p. 1517; accord, *Glazier*, *supra*, at pp. 1160–1161; *Aguilar*, *supra*, at pp. 970, 972.)

## II. Occupied Burglary Enhancement

Arambula argues that the evidence is insufficient to support the jury's occupied burglary enhancement finding, and Munguia argues that under the plain language of the statute, the evidence is insufficient to support the enhancement as a matter of law. The premise underlying both parties' arguments is that the commission of burglary is complete upon entry and no one, other than an accomplice, was present at that time.

The People contend it is well recognized that a burglary continues after the time of entry with the intent to commit theft or another felony, and the burglary was ongoing when Tejeda entered the residence.

We review Arambula's and Munguia's challenges to the legal sufficiency of the undisputed evidence supporting the occupied burglary enhancement de novo.[11] (*People v. Perkins* (2016) 244 Cal.App.4th 129, 136; *People v. Harris* (2014) 224 Cal.App.4th

---

[11] Citing *In re K.F.* (2009) 173 Cal.App.4th 655, Arambula contends this claim was not forfeited on appeal by her trial counsel's failure to object because "[s]ufficiency of the evidence has always been viewed as a question necessarily and inherently raised in every contested trial of any issue of fact, and requiring no further steps by the aggrieved party to be preserved for appeal." (*Id.* at p. 660.) The People do not argue otherwise and we therefore assume without deciding that this claim was not forfeited. (See *People v. McCullough* (2013) 56 Cal.4th 589, 593 ["neither forfeiture nor application of the forfeiture rule is automatic"]; see also *People v. Williams* (2013) 218 Cal.App.4th 1038, 1052–1053 [reaching issues intertwined with statutory interpretation notwithstanding forfeiture objection because it "serves the interest of avoiding similar errors in future cases"].)

16.

86, 89; *People v. Elder* (2014) 227 Cal.App.4th 411, 421; *People v. Villalobos*, *supra*, 145 Cal.App.4th at p. 316, fn. 3.)

### A.    Section 667.5, Subdivision (c)(21)

Pursuant to section 667.5, subdivision (a):

> "Enhancement of prison terms for new offenses because of prior prison terms shall be imposed as follows:

> "(a) Where one of the new offenses is one of the violent felonies specified in subdivision (c), in addition to and consecutive to any other prison terms therefor, the court shall impose a three-year term for each prior separate prison term served by the defendant where the prior offense was one of the violent felonies specified in subdivision (c).  However, no additional term shall be imposed under this subdivision for any prison term served prior to a period of 10 years in which the defendant remained free of both prison custody and the commission of an offense which results in a felony conviction."

First degree burglary where a nonaccomplice is present was elevated to a violent felony within the meaning of section 667.5, subdivision (c), in 2000 as part of Proposition 21.  (*People v. Singleton* (2007) 155 Cal.App.4th 1332, 1336 (*Singleton*).) "Occupied burglary plainly presents a potential for violence and consequently merits enhanced punishment." (*Doe v. Saenz*, *supra*, 140 Cal.App.4th at p. 988; accord, *People v. Debouver* (2016) 1 Cal.App.5th 972, 982; accord, *People v. Harris*, *supra*,  224 Cal.App.4th at p. 91.)  It "does not require the use or threat of force.  Indeed, the crime does not require any contact between the defendant and the occupant.  The mere presence of a nonaccomplice in the dwelling is sufficient.  Further, knowledge that a dwelling is occupied is not an element of occupied burglary.  Thus, a burglary may qualify as an occupied burglary under … section 667.5[, subdivision ](c)(21) even though the defendant had no contact with the occupant and thought no one was present in the home during the burglary." (*Doe v. Saenz* , *supra*, at p. 987.)

**B.     Meaning of "[D]uring the [C]ommission of the [B]urglary"[12]**

"The canons of statutory interpretation are well settled." (*Singleton*, *supra*, 155 Cal.App.4th at p. 1337.) "If there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs." (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272; *In re Gilbert R.* (2012) 211 Cal.App.4th 514, 519.)

In this case, it is undisputed that Tejeda was not in the residence when Arambula, Munguia and Ribeiro entered it. He later entered the residence while Arambula was still upstairs. Munguia and Ribeiro returned to the residence shortly thereafter, where they encountered Tejeda waiting outside of the house for police to arrive.

Arambula's and Munguia's arguments focus on the completion of the crime in terms of the elements and the fact that Tejeda was not present in the residence at the time of entry. We agree that assuming the requisite intent is present, burglary is technically complete upon entry, as the elements of the offense have been satisfied. (*Montoya*, *supra*, 7 Cal.4th at pp. 1041–1042; *People v. McEntire* (2016) 247 Cal.App.4th 484, 491.) However, there is a distinction between the point at which the commission of a burglary is technically complete for the purpose of establishing criminal liability and the point at which the commission of a burglary is complete in that it has ended, and we reject Arambula's and Munguia's positions that the former controls with respect to the occupied burglary enhancement. (*Montoya*, *supra*, at pp. 1039–1043.)

In *Montoya*, the California Supreme Court addressed the duration of the crime of burglary. (*Montoya*, *supra*, 7 Cal.4th at p. 1038.) Although it did so in the context of aider and abettor liability rather than the occupied burglary enhancement, we find the analysis instructive. (*Ibid.*)

As in this case, the defendant in *Montoya* argued that because the crime of burglary is complete with respect to the elements of the offense upon entry, aider and

---

[12]     Section 667.5, subdivision (c)(21).

18.

abettor liability was dependent upon forming "the requisite intent to commit, encourage, or facilitate the offense *prior to or during entry by the perpetrator*." (*Montoya*, *supra*, 7 Cal.4th at pp. 1039–1040.) The court had previously concluded in a robbery case that "the temporal threshold for establishing guilt—a fixed point in time at which all elements of the substantive offense are satisfied so that the offense itself may be considered to have been '*initially* committed' rather than simply attempted—is *not* synonymous with the 'commission' of that crime for the purpose of determining aider and abettor liability." (*Id.* at p. 1040.) Applying that analysis to the crime of burglary, the court determined "that the duration of a burglary … extends until the perpetrator's [final] departure from the structure." (*Id.* at pp. 1046–1047.)

In reaching this conclusion, the court considered the elements of burglary and the interests the law sought to protect, observing, "It is manifest that the increased danger to the personal safety of the occupant, and the increased risk of loss or damage to his or her property contemplated by the statutory proscription, do not terminate at the moment entry is accomplished, but rather continue while the perpetrator remains inside the structure. Certainly, an absent occupant could return at any moment and be faced with the danger created by the prior entry." (*Montoya*, *supra*, 7 Cal.4th at p. 1043.) "Moreover, as long as the perpetrator remains inside the structure, the increased danger to the personal safety of the occupant and the increased risk of loss or damage to his or her property continues, whether the perpetrator commits a felony or theft different from that intended at the time of entry, or even if no felony or theft is completed." (*Ibid.*)

The court drew additional support from comparing burglary to sex offenses, stating, "[T]he victim of a rape would not agree the offense was completed simply because all legal elements of the offense were established by the initial forcible penetration. [Citation.] Similarly, one who happens to be at home during a burglary and becomes aware not only of the entry itself, but of the burglar's continued presence, would not agree the offense was completed once the entry was accomplished, but rather would

19.

conclude the burglary ceased only when the burglar departed from the structure and the danger was past. One happening to arrive home after the burglar's entry but while he or she still is present in the residence would reach the same conclusion. It also is apparent that, even if the occupant is not present, the risk to property would continue during the entire period the burglar remains in the structure and is not diminished simply because the entry itself has been accomplished." (*Montoya*, *supra*, 7 Cal.4th at p. 1045, fn. omitted.)

The considerations underlying the court's conclusion in *Montoya* apply with equal force to the occupied burglary enhancement, which by its plain language applies to the presence of a nonaccomplice *during the commission of a burglary*. Occupied burglary was elevated to a violent felony because of the recognized dangers inherent in burglarizing an occupied residence. The briefest of overlaps between entry and the presence of a nonaccomplice suffices for the enhancement (*People v. McEntire*, *supra*, 247 Cal.App.4th at p. 492; *People v. Garcia* (2004) 121 Cal.App.4th 271, 280–281), and it matters not whether a nonaccomplice is present at the time of entry or interrupts the burglary in progress; in either circumstance, the nonaccomplice is present during the commission of the burglary, thereby creating the very situation of danger at which the enhancement is directed.

Munguia urges us to focus on the plain language of the statute and we have done so. While criminal liability attached at the time of entry and Tejeda was not then present, Arambula had not yet departed the residence for the final time when Tejeda entered it.[13]

---

[13] Munguia returned to the house in a vehicle and asked if Tejeda would let his friend out who had been left behind. Although Munguia does not argue otherwise, we note this evidence is sufficient to support a reasonable inference that Munguia had not departed the residence for the final time. (*Montoya*, *supra*, 7 Cal.4th at pp. 1046–1047.)

20.

He was, therefore, present "during the commission of the burglary" and the enhancement, by its plain language, applies.[14] (§ 667.5, subd. (c)(21).)

The *Singleton* decision, which is cited by all parties, interpreted the meaning of "present in the residence" under section 667.5, subdivision (c)(21). The Court of Appeal found that "[s]ection 667.5, subdivision (c)(21) is plain on its face, and it requires a person, other than an accomplice, be '*present in the residence* during the commission of the burglary.' (Italics added.) The plain meaning of 'present in the residence' is that a person, other than the burglar or an accomplice, has crossed the threshold or otherwise passed within the outer walls of the house, apartment, or other dwelling place being burglarized." (*Singleton*, *supra*, 155 Cal.App.4th at p. 1337.)

Our decision here presents no departure from any principles articulated by the Court of Appeal in *Singleton*. The focus in that case was the presence of a nonaccomplice *in* the residence, however, and the court held the tenant's presence outside of the apartment in an exterior common hallway was not presence *in* the residence as required under the statute. (*Singleton*, *supra*, 155 Cal.App.4th at pp. 1337–1338; but see *People v. Debouver*, *supra*, 1 Cal.App.5th at pp. 981–982 [enhancement applied where apartment manager caught the defendant burglarizing vehicles in secured garage that

---

[14]    Although we do not find reliance on dictionary definitions necessary here, given Munguia's stated view of the ordinary, commonplace meaning of "commission," we observe that Black's Law Dictionary (9th ed. 2009) at page 306 defines "commission" as "[t]he act of doing or perpetrating (as a crime)." (See *Ross v. Blake* (2016) __ U.S. __, __ [136 S.Ct. 1850, 1858–1859] [considering ordinary meaning of statutory language by reference to dictionaries]; see *People v. Castillolopez* (2016) 63 Cal.4th 322, 327 [same]; see also *People v. Casarez* (2012) 203 Cal.App.4th 1173, 1185 [same].) Webster's New World Dictionary (2d college ed. 1982) at page 285 defines "commission" as "the act of committing or doing; perpetration, as of a crime." Reliance on the ordinary, commonplace meaning of commission offers no support for the view that "commission" as contemplated by section 667.5, subdivision (c)(21), equates to "the temporal threshold for establishing guilt" relevant to determining criminal liability. (*Montoya*, *supra*, 7 Cal.4th at p. 1040.) Arambula was clearly still engaged in "the act of committing or doing" the burglary when Tejeda entered the residence. (Webster's New World Dict., *supra*, at p. 285.)

shared roof with and was integrated part of apartment complex].)  There is no question Tejeda was *in* the residence prior to the completion of the burglary, and on the issue presented here, *Singleton* is inapposite.

Our conclusion also draws support from the decision in *People v. Alvarado* (2001) 87 Cal.App.4th 178 (*Alvarado*), cited by the People.  In that case, the Court of Appeal considered the defendant's substantial evidence challenge to the jury's finding he committed rape "'during the commission of a burglary'" within the meaning of section 667.61, subdivision (e)(2) (the "One Strike" law) (*Alvarado*, *supra*, at pp. 183, 185)*,* and held "that the phrase 'during the commission of a burglary' includes the period of time that a burglar remains on the premises after entry and extends until the burglar has reached a place of temporary safety" (*id.* at p. 183).

Although *Alvarado* concerned rape during the commission of a burglary, as Arambula points out, it nonetheless addressed the statutory meaning of "'during the commission of a burglary'" in response to the defendant's argument that "under section 667.61[, subdivision ](e)(2), a rape 'during the commission of a burglary' does not include a rape after the burglary has been *initially* committed." (*Alvarado*, *supra*, 87 Cal.App.4th at p. 185.)  The issue in *Alvarado* and the issue here share the same completion of the crime argument directed at the same statutory phrase, and both statutes are intended to enhance the punishment for certain crimes based on recognition of the increased danger, or potential danger, to victims of residential burglary.  (*People v. Debouver*, *supra*, 1 Cal.App.5th at p. 982; *People v. Harris*, *supra*, 224 Cal.App.4th at p. 91; *Doe v. Saenz*, *supra*, 140 Cal.App.4th at p. 988; *Alvarado*, *supra*, at pp. 186–187.)

We are not persuaded by Arambula's contention that the analysis in *Alvarado* has no application here and we agree with the court in *Alvarado*, which stated:  "We find [the] defendant's technical view of 'during the commission of a burglary' to be

22.

unreasonably narrow and believe it would substantially frustrate the purpose of [the statute]."[15] (*Alvarado*, *supra*, 87 Cal.App.4th at p. 187.)

Accordingly, we find no merit to Arambula's and Munguia's arguments that because Tejeda was not present in the residence at the time of entry, he was not present during the commission of the burglary.

## III. Admission of Prior Burglary Conviction[*]

### A. Evidence of Prior Crime to Prove Intent

"'Evidence of a person's character, also known as propensity evidence, is inadmissible to prove conduct in conformity with that character trait.' [Citations.] However, under Evidence Code section 1101, subdivision (b), evidence of other crimes 'can be admitted for *other* relevant purposes, such as proving … intent,' even if it is inadmissible 'to prove the defendant had a disposition to commit similar bad acts.' [Citation.] 'In order to be admissible to prove intent, the uncharged misconduct must be sufficiently similar to the charged offense to support the inference that the defendant probably acted with the same intent in each instance.' [Citation.] '"The inference to be drawn is not that the actor is *disposed* to commit such acts; instead, the inference to be drawn is that, in light of the first event, the actor, at the time of the second event, must have had the intent attributed to him by the prosecution."'" (*People v. Scott* (2015) 61 Cal.4th 363, 398.)

"Even if evidence is admissible under Evidence Code section 1101, subdivision (b), it must be excluded nonetheless under Evidence Code section 352 if the

---

[15] The People's citations to *People v. Elder*, *supra*, 227 Cal.App.4th at page 423 and *People v. Walls* (1978) 85 Cal.App.3d 447 at pages 452–453 also support our conclusion that application of section 667.5, subdivision (c)(21), is not limited to circumstances where the nonaccomplice is present in the residence at the time of entry and Arambula's criticism of those authorities is equally unpersuasive.

[*] See footnote, *ante*, page 1.

probative value of the evidence is outweighed by its prejudicial effect." (*People v. Ranlet* (2016) 1 Cal.App.5th 363, 374.)

## B. Procedural Background

At trial, the prosecutor argued there was a sufficient degree of similarity between the two burglaries given Munguia possessed the same intent in both crimes and was an opportunist in both crimes. Trial counsel contended the two crimes were "extremely and noticeably different," and the only similarity was exculpatory: Munguia was not found with stolen property in either case.

Over trial counsel's objections, the court ruled that evidence of Munguia's prior burglary conviction was admissible to prove intent under Evidence Code section 1101, subdivision (b), but it excluded the facts of the prior conviction under Evidence Code section 352. The trial court found that in both cases, the crimes were "a team effort," with Munguia utilizing the help of others to take property in the prior burglary and move property in the burglary of Tejeda's house.

The parties subsequently stipulated to Munguia's burglary conviction, an election trial counsel stated for the record was made for tactical reasons.

Munguia argues on appeal that the court erred in admitting his prior burglary conviction because the crime was not sufficiently similar to the burglary of Tejeda's house to satisfy Evidence Code section 1101, subdivision (b), and its probative value was outweighed by its prejudicial effect under Evidence Code section 352. The People contend generally that the prior crime and the charged crime were both residential burglaries and were therefore identical, and that Munguia's prior commission of a residential burglary was highly probative of his intent when he entered Tejeda's house. They do not otherwise point to any specific similarities between the two crimes.

## B. Harmless Error

"We review a trial court's admission or exclusion of evidence under the Evidence Code for abuse of discretion and reverse only if the evidentiary ruling was arbitrary or

24.

capricious as a matter of law." (*People v. Ranlet*, *supra*, 1 Cal.App.5th at p. 374; *People v. Leon* (2015) 61 Cal.4th 569, 597.)

"The least degree of similarity [between the offenses] is required in order to prove intent." (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402; accord, *People v. Harris*, *supra*, 57 Cal.4th at p. 841.) However, "[i]n order to be admissible to prove intent, the [prior] misconduct must be sufficiently similar to support the inference that the defendant '"probably harbor[ed] the same intent in each instance." [Citations.]'" (*People v. Ewoldt*, *supra*, at p. 402; accord, *People v. Harris*, *supra*, at p. 841.)

While the two crimes need not be identical, the mere fact both crimes were residential burglaries does not suffice and we reject the People's contrary position. (*People v. Harris*, *supra*, 57 Cal.4th at pp. 841–842.) Munguia's prior conviction arose from an incident in which he and a friend went to the house of someone the friend had previously been in a sexual relationship and used drugs with. They were invited in and sometime after the three consumed drugs together, Munguia asked for something to eat and after returning from the kitchen, held a knife to the victim's throat and threatened to tie him up. Then either Munguia or his friend took some of the victim's property.

The only similarity between the two crimes identified by the trial court was that Munguia did not act alone. That there was more than one perpetrator is simply not enough to support an inference that Munguia probably had the same intent both times. (See e.g., *People v. Rocha* (2013) 221 Cal.App.4th 1385, 1396 [both crimes involved entry into the open garages of strangers and carrying away their property]; *People v. King* (2010) 183 Cal.App.4th 1281, 1302 [significant dissimilarities and only superficial commonalities between acts]; *People v. Wilson* (1991) 227 Cal.App.3d 1210, 1217 [the defendant knew the victims of both burglaries, he entered when they were not home and he used the same excuse in both crimes]; *People v. Nible* (1988) 200 Cal.App.3d 838, 846–847 [prior crimes involved entry into women's bedrooms at night through window

25.

screens and touching them, and charged crime involved same preparatory act of removing window screen to woman's bedroom].)

However, while the erroneous admission of prior misconduct can result in reversible error, this was not a close case. (*People v. Johnson* (2010) 185 Cal.App.4th 520, 540.) Munguia admitted entering Tejeda's house, footprints matching the size and tread of his shoes were found in the residence, he returned to the residence with Ribeiro while Arambula was still inside, and he told Tejeda his friend had been left behind and asked that she be let out. Moreover, a couch was uncovered, carpeting was pulled back from the walls, tools and other items were gathered together, and some of the tools were placed in a tool bag.

Therefore, we reject Munguia's contention that the case against him was weak and the admission of the prior burglary conviction resulted in prejudicial error. We conclude that even if the admission of Munguia's prior burglary conviction was erroneous under Evidence Code section 1101, subdivision (b), or under Evidence Code section 352, the error was harmless under any standard.[16] (*People v. Jablonski* (2006) 37 Cal.4th 774, 822–823, citing *People v. Watson*, *supra*, 46 Cal.2d at p. 836 & *Chapman*, *supra*, 386 U.S. at p. 24.)

## IV. Instructional Error[*]

Finally, Munguia argues the trial court's instruction on the occupied burglary enhancement was incomplete because it failed to inform the jury that burglary is complete upon entry, and the jury's confusion on this issue was shown by its note asking,

---

[16] Munguia contends the *Chapman* standard of review applies because admission of the prior conviction resulted in a denial of his federal constitutional right to due process. We need not determine which standard applies given the harmlessness of the error under either the state standard (*People v. Watson* (1956) 46 Cal.2d 818, 836), or the federal standard (*Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*)).

[*] See footnote, *ante*, page 1.

26.

"When does the commission of the crime stop?"[17]  He contends the error was prejudicial because had the court properly informed the jury that burglary is complete upon entry, it never would have found a person was present during the commission of the burglary. Munguia concedes trial counsel failed to object to the instruction or the trial court's proposed response to the jury's question, but contends that if we conclude his claim is forfeited, he received ineffective assistance of counsel.

The People respond Munguia's failure to object to the instruction at trial, or ask for amplification or modification, resulted in forfeiture of the claim.  In the alternative, they argue Munguia's claim lacks merit because the commission of a burglary continues past entry and even though the trial court could have instructed the jury more specifically on that point, its failure to do so was harmless.

The failure to object to the special instruction on occupied burglary as incomplete or unclear, and to the trial court's proposed response to the jury's question (§ 1138),[18] results in forfeiture of the claim (*People v. Boyce* (2014) 59 Cal.4th 672, 699; *People v. Debouver*, *supra*, 1 Cal.App.5th at p. 982), but we find Munguia's claim lacks merit in any event.  We previously rejected Arambula's and Munguia's claims that for the purpose of the occupied burglary finding (§ 667.5, subd. (c)(21)), commission of the burglary ends upon entry.  As a result, Munguia would not have been entitled to the clarification he now seeks.

Moreover, Munguia cannot show he was prejudiced because to the extent the instruction was otherwise incomplete or unclear, providing greater clarification on the

---

[17]  The court instructed the jury:  "Now, if you find a defendant guilty of first-degree burglary, you must then decide whether the People have proved that a person authorized to be in the dwelling, not an accomplice, was present during the commission of said crime."

[18]  Section 1138 provides:  "After the jury have retired for deliberation, if there be any disagreement between them as to the testimony, or if they desire to be informed on any point of law arising in the case, they must require the officer to conduct them into court.  Upon being brought into court, the information required must be given in the presence of, or after notice to, the prosecuting attorney, and the defendant or his counsel, or after they have been called."

27.

commission of burglary for the purpose of the enhancement would have not resulted in a different finding.  (*People v. Beardslee* (1991) 53 Cal.3d 68, 97; *People v. Estrada* (1995) 11 Cal.4th 568, 574–575; *People v. Eid* (2010) 187 Cal.App.4th 859, 882; *People v. Solis* (2001) 90 Cal.App.4th 1002, 1015.)  Accordingly, we reject Munguia's claim of instructional error.

## DISPOSITION

The judgment is affirmed.


_____
                                                                                          KANE, J.

WE CONCUR:


_____
LEVY, Acting P.J.


_____
DETJEN, J.

28.